678 A.2d 80

**Anthony Lamont LEEKS**

v.

**STATE of Maryland.**

**No. 943, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

June 26, 1996.

John L. Kopolow, Asst. Public Defender, (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Atty. Gen., Baltimore, Jack B. Johnson, State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Submitted before CATHELL, MURPHY and HOLLANDER, JJ.

MURPHY, Judge.

Hope and a longing for reward for one's efforts lie at the heart of the human condition.

*Knox et al. v. Lanham et al.,* 895 F.Supp. 750, 758 (D.Md. 1995).

[E]ven an untruthful man will not usually lie without a motive.

*Gates v. Kelley,* 15 N.D. 639, 110 N.W. 770, 773 (1906).

■ These insightful observations, the first by the Honorable J. Frederick Motz of the United States District Court for the District of Maryland, and the second by the Honorable Edward Engerud of the North Dakota Supreme Court, explain why every litigant must be afforded a full and fair opportunity to establish "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." *United States v. Abel,* 469 U.S. 45, 52, 105 S.Ct. 465, 469, 83 L.Ed.2d 450 (1984). Md.Rule 5–616(a)(4) grants each party an opportunity to question a witness about facts that are of consequence to the issue of whether "the witness is biased, prejudiced, interested in the outcome of the proceeding, or has a motive to testify falsely." This appeal from the Circuit Court for Prince George's County presents the question of whether Anthony Lamont Leeks, appellant, was unfairly denied such an opportunity.[1]

## BACKGROUND

■ The following evidence was sufficient to persuade a Prince George's County jury that on the night of May 11,

1. Appellant also contends that the evidence was not "legally sufficient to sustain [his] conviction for second degree depraved heart murder," and that "the trial judge abused his discretion in admitting photographs of the deceased which were part of the autopsy report." We are persuaded that the evidence was sufficient. At appellant's new trial, the presiding judge shall resolve the autopsy photographs issue in accordance with the principles stated in *State v. Broberg,* 342 Md. 544, 677 A.2d 602 (1996).

1993, appellant committed a second degree ("depraved heart") murder and used a handgun in the commission of that felony. Appellant was in a group of persons near an apartment complex in Landover where the victim was shot. Appellant said something that a man named "Cliff" considered offensive. After an argument and about two minutes of fighting, both appellant and "Cliff" went to their respective cars. Appellant then rejoined the group, looking for "Cliff." Now, however, appellant was holding a small automatic pistol.

As appellant began waving the gun in the air, the gun fired and a bystander was shot. At this point someone tried to wrestle appellant to the ground. In the ensuing struggle, the gun fired again and yet another bystander was shot. The murder victim was shot in the head. Fortunately, the other bystander was merely grazed.

## THE ISSUE

Donzell Thompson was, in the words of the prosecutor, the State's "main witness." On June 15, 1994, Thompson had entered a plea of guilty to the crime of assault that had allegedly occurred in 1991. In that same case, however, he had also been charged with armed robbery and felony theft. On December 12, 1994, Thompson had entered a plea of guilty to the crime of disorderly conduct. In that same case, however, he had also been charged with theft and assault. On March 16, 1995, the State nol prossed a controlled dangerous substance charge then pending against him. All of these cases were handled by the Office of the State's Attorney for Prince George's County.[2]

Before opening statements the following occurred:

PROSECUTOR: Before you bring in the jury, I want to make a motion on the couple of items I think [Defense Counsel] might be inclined to mention in his opening.

---

2. The record does not reveal whether, at the time of appellant's trial, Mr. Thompson had been sentenced in any of these cases.

[Defense Counsel] had mentioned to me around lunch time that—words to the effect of Dansel [sic] Thompson, and this is my main witness, has a really bad record, and I thought well, gee, maybe I better run his record and see what it has [sic]. At first blush he's been charged with robbery and theft, but it appears although it says they were either nolle prossed or plead down to misdemeanors such as assault and battery, disorderly conduct, and those types of things, the State believes that he does not have any crimes which would be admissible as impeachable offenses.

. . . .

DEFENSE COUNSEL: Your Honor, as far as Mr. Thompson's recordings [sic], there is a number of cases that I'm interested in, but one in particular is CT 91–1857A. He was charged armed robbery, and a number of other related offenses including theft over and under, and things like that. At least theft over.

Also he has an AKA of Reginald Alphonso Thompson. His name that the States [sic] has got him for in this case is Dansel [sic] Nathaniel Thompson. In that situation, an armed robbery allegedly occurred August 6th of 1991 at 1:25 a.m., and one of the victim's [sic] was a man named Oscar Mitchell. That case was around the courthouse for a long, long time.

. . . .

. . . Their whole case is based on testimony of Dansel [sic] Nathaniel Thompson. That has been known for quite some time.

On June 15th of 94, Dansel [sic] Thompson plead guilty not to an armed robbery, not to a theft, not to anything that could be a crime of moral turpitude. Seems to be very carefully placed that they made it an assault, and, I think that was very unusual, based on my experience as a prosecutor and defense attorney that that is what happened.

. . . .

THE COURT: What I will do is, I will let you voir dire the witness out of the presence of the jury first, to determine

whether or not there's any symptoms of a deal that has been made.... [Defense counsel], I'm going to ask the State to bring this witness in, and put him on the stand. You are restricted to inquiring as to whether or not there have been any deals made between the defense—I'm sorry, between the witness and the State with respect to this witness.

DEFENSE COUNSEL: Thank you, Your Honor. I would ask one other area to inquire of him, and that is his D.C. record.

THE COURT: No sir.

DEFENSE COUNSEL: Let me put on the record—

THE COURT: I don't care what your reason is. The answer is no, I am bringing this man in under Court order. You will be restricted to whether or not there has been any deal made between this person and the State with respect to this case.

. . . .

I don't care sir. You'll not inquire as to his [D.C.] record, is that clear?

DEFENSE COUNSEL: Very well, Your Honor.

The following transpired during this voir dire proceeding:

Q: Mr. Thompson, your full name is Donzell Nathaniel Thompson, is that correct?

A: Correct.

Q: Your date of birth?

THE COURT: You may inquire. I told you what [you] could inquire about, sir.

DEFENSE COUNSEL: I want to make sure—

THE COURT: I don't care. I told you what you are restricted to, sir.

. . . .

Q: Okay. Now, all three of these cases that I have just mentioned, there is CDS possession, petty theft and armed robbery, were disposed of after May of 1993, when this murder took place, isn't that correct?

A: Yes, I guess.

Q: Well, [the victim] was killed in May of 1993, isn't that right?

A: If it was May, I guess it was. It is so many years ago I don't recall which month it was.

Q: Do you remember what year?

A: No, I do not.

Q: From the beginning of [the victim's] case, you were a State's witness, isn't that right?

A: Correct.

Q: Okay. And, has the State offered you anything in exchange for your testimony?

A: No they haven't.

Q: Are you in jail right now?

A: Yes, I am.

Q: What are you in jail for right now?

THE COURT: Don't answer that. Do not answer that.

Q: Has the State told you they are going to get you out of jail?

A: No, they haven't.

Q: Okay. Have they told you that—well let me put it this way. Have they told you things would go better for you if you cooperated with them?

A: No, they haven't.

Q: Are you telling me that you had a charge of armed robbery back in 1991, disposed of last year, 1994, as an assault, no theft, no robbery count, just as assault, and it was no deal with the State?

A: No, it was not.

Q: Okay. Now when was the last time you talked to ... th[e] prosecutor in this case?

THE STATE: Objection.

THE COURT: Sustained.

. . . .

**552**

Q: Have you talked to any other State's Attorney besides [this one]?

THE COURT: You mean about this case?

DEFENSE COUNSEL: About this case or any of the other cases.

THE COURT: No, about this case. I have no problem. Have you talked to any other State's Attorney about this case?

THE WITNESS: No, I have not.

Q: Now, Mr. Thompson, have you ever informed any— either by yourself or through counsel have you informed anybody or State's Attorney that you are the Donzell Thompson to testify in this case?

. . . .

A: No, I have not.

Q: What is your explanation for why you plead guilty to disorderly conduct, rather than petty theft in December of—

THE COURT: No, sir.

. . . .

Q: Mr. Thompson, have you ever gone by the name of Reginald Alphonso Thompson?

A: That's my brother.

Q: That's your brother. Were you arrested in an armed robbery case in 1991, when you gave the name Reginald Alphonso Thompson, isn't that correct?

A: No, that's not.

Q: Why on your case jacket—

THE COURT: That's enough of this. That's enough of this. Any other questions?

DEFENSE COUNSEL: Well, Your Honor I'm restricted to ask questions that I need to ask—

THE COURT: Do you have another question, sir?

DEFENSE COUNSEL: No, Your Honor.

After defense counsel finished questioning Thompson, the judge granted the State's motion and stated to defense counsel:

Your motion is denied, The Court has now ruled. I will [not hear] another word about it.

During the trial, appellant's trial counsel made no effort to circumvent that ruling.[3] During his closing argument, the prosecutor made the following comments about Mr. Thompson's credibility.

... Donzell Thompson was a credible witness. Donzell Thompson told you, I was out there that night. This is what happened, and again, I'm going to ask you when you are deliberating, and if you have any questions about his credibility, to think about the times he would close his eyes, and he would take a minute, and he would do something with his hand, and you could see him re-playing the events in his mind, so that he would give you a correct answer.

Recall also that this event is two years old, and that people's memories are not as fresh, as if we had had the trial the week after it happened. There's a lot of reasons why cases get old, and that's not something you should speculate on or wonder about, but when Donzell was directed to his statement or other things to help refresh his memory, then he would stop, and he would think about it, and then he would say oh, yes, this is what happened.

## ANALYSIS

As is shown by the above argument, the State was given the opportunity to present Thompson as a believable witness. Unfortunately, defense counsel was never given an adequate opportunity to establish the existence of evidence that would support a contrary conclusion. We are persuaded that the trial judge should not have restricted the efforts of appellant's

---

**3.** In light of the above-quoted proceedings, nothing else was required to preserve the foreclosure of impeachment issue for our review. *See Simmons v. State,* 313 Md. 33, 38, 542 A.2d 1258 (1988); *Yowell v. State,* 28 Md.App. 279, 282–283, 344 A.2d 442 (1975).

trial counsel to establish a factual predicate for the introduction of evidence that Thompson's testimony was slanted in favor of the State.

"It is well settled law in this State that exploratory questions on cross-examination are proper when they are designed to affect a witness' credibility, test his memory or exhibit bias." *Kruszewski v. Holz,* 265 Md. 434, 440, 290 A.2d 534 (1972); *see also State v. Cox,* 298 Md. 173, 178, 468 A.2d 319 (1983). The Sixth Amendment right of confrontation includes the right to cross-examine about matters that affect a witness's bias, interest, or motive to lie. *Brown v. State,* 74 Md.App. 414, 418, 538 A.2d 317 (1988) (citations omitted).

It is true, of course, that the right to cross-examine is not absolute and may be restricted by the trial judge. Any such restriction, however, should be manifested by the exercise of sound discretion. *Cox,* 298 Md. at 183, 468 A.2d 319; *Waldron v. State,* 62 Md.App. 686, 696, 491 A.2d 595, *cert. denied,* 304 Md. 97, 497 A.2d 819 (1985); *Fletcher v. State,* 50 Md.App. 349, 357, 437 A.2d 901 (1981). When the trial judge

> limits cross-examination of a witness so as to preclude a demonstration of bias, prejudice or other unworthy motivation on the part of the witness, he prevents the defense from presenting all of the facts, forestalls an adequate basis for assessment of credibility and erodes the purpose of cross-examination....

*Deinhardt v. State,* 29 Md.App. 391, 397, 348 A.2d 286 (1975), *cert. denied,* 277 Md. 736 (1976); *see also, Waldron,* 62 Md.App. at 697, 491 A.2d 595. "Clearly, the absolute preclusion of cross-examination pertaining to a witness's motive for testifying would be an abuse of discretion...." *Fletcher,* 50 Md.App. at 357, 437 A.2d 901. This is especially the case, when the witness the defendant wishes to cross-examine is the prosecution's key witness. *State v. DeLawder,* 28 Md.App. 212, 226–27, 344 A.2d 446 (1975).

As this Court has stated previously:

[t]he test of admissibility ... is whether the question asked is directed at eliciting from a prosecution witness the fact that he may be under pressure to testify favorably for the State, as when he is under formal accusation, and/or incarceration awaiting trial. We do not mean to imply that any time a witness testifies against a criminal defendant his entire record of previous arrests becomes relevant to the inquiry. Only where there is some present possibility of coercion should such cross-examination be allowed.

*Johnson v. State*, 30 Md.App. 512, 516–17, 352 A.2d 371, *cert. denied*, 278 Md. 735 (1976).

In decisions affirming rulings that restricted the cross-examination of a State's witness, the Court of Appeals has never rejected the principles discussed in *Deinhardt* and *Johnson*. In *Collins v. State*, 318 Md. 269, 568 A.2d 1. *cert. denied*, 497 U.S. 1032, 110 S.Ct. 3296, 111 L.Ed.2d 805 (1990), the court rejected a contention that the trial judge had erroneously denied the accused an opportunity to cross-examine an admitted accomplice about drug possession charges pending against the witness at the time of his testimony. *Id.* at 281, 568 A.2d 1. Collins argued that, from evidence that this witness was in possession of a large quantity of narcotics, the jurors could disbelieve his testimony that he was broke and in need of money at the time of the offense. *Id.*

The trial judge had prohibited such impeachment for two reasons: (1) the accomplice had not been convicted of the possession charge and (2) there were other persons in proximity to the drugs at the time the drugs were found. *Id.* at 281–82, 568 A.2d 1. The Court of Appeals held that, because there was sufficient evidence of the accomplice's drug involvement to allow the jury to assess his credibility, and because the accomplice had outlined his plea agreement with the State during his direct examination, the trial judge's restriction was harmless error. *Id.*

In *Watkins v. State*, 328 Md. 95, 613 A.2d 379 (1992), the Court held that defense counsel was not entitled to impeach two key State's witnesses by establishing that they were

currently on probation. *Id.* at 100, 613 A.2d 379. Watkins defended the charges against him by claiming that he acted out of self-defense at a meeting with the victims that involved the sale of some "bad" drugs. Defense counsel did not suggest that either witness had received probation as a *quid pro quo* for their favorable testimony in this case. *Id.* The defense did argue, however, that the probationary status of these witnesses gave them an additional reason to deny any involvement with drugs. *Id.* at 102, 613 A.2d 379.

Conceding that there was some merit in this argument, the Court pointed out that the trial judge did have discretion to permit such evidence. *Id.* at 102–03, 613 A.2d 379. The Court ultimately concluded, however, that the trial judge did not abuse his discretion when he excluded the evidence after weighing its probative value against other appropriate considerations. *Id.* at 103, 613 A.2d 379.

In *Ebb v. State,* 341 Md. 578, 671 A.2d 974 (1996), the Court affirmed murder convictions against a defendant who had been denied the opportunity to question two State's witnesses about pending criminal and/or violation of probation charges. The trial judge held a hearing outside the presence of the jury and determined that only one of three State's witnesses hoped to benefit from his testimony. The Court of Appeals held that the trial judge did not abuse his discretion in precluding the cross-examination of the two witnesses who denied any expectation of favorable consideration. *Id.* at 586, 671 A.2d 974.

█ *Collins, Watkins,* and *Ebb* make it clear that the trial judge is not obligated to allow cross-examination about every charge pending against a State's witness. Those cases, however, are distinguishable from the case before us. In *Watkins,* the defendant did not argue that either witness had been given probation because of a deal with the State. The defense in that case was more interested in showing the jury that the State's witnesses were bad persons who lacked veracity because they were involved in drug dealing. The same was true in *Collins.* Moreover, the key witness in *Collins* testified on direct examination about his deal with the State. In *Ebb,* the

trial judge did allow cross-examination to establish the bias of the one witness who had acknowledged his hope of future consideration.

In *Jackson v. State,* 340 Md. 705, 668 A.2d 8 (1995), the Court of Appeals suggested that when deciding whether a witness can be questioned about a prior conviction, the trial judge should

(1) hold an on the record hearing outside of the presence of the jury;

(2) afford each party the opportunity to address factors that must be considered in weighing the probative value of the conviction against the danger of unfair prejudice; and

(3) after deciding the issue, "place specific circumstances and factors critical to the decision on the record."

*Id.* at 717, 668 A.2d 8. We are persuaded that an on the record evidentiary hearing, with the jurors out of the courtroom, is necessary when the trial judge is asked to rule *in limine* that a witness cannot be asked questions permitted by Rule 5–616(a)(4). Rules 5–401 and 5–403 apply at this hearing, interrogation should be limited to the matters listed in Rule 5–616(a)(4), and counsel are not entitled to turn the hearing into a discovery deposition. At this hearing, however, the trial judge must afford counsel an adequate opportunity to question the witness about every fact that would reasonably suggest the existence of bias. The issue of bias is often generated by circumstantial evidence, and does not disappear merely because the witness denies any reason to be biased.[4] If such circumstantial evidence exists, the trier of fact is entitled to observe the witness's demeanor as he or she responds to questions permitted by Rule 5–616(a)(4).

When the trier of fact is a jury, questions permitted by Rule 5–616(a)(4) should be prohibited only if (1) there is no factual foundation for such an inquiry in the presence of

---

4. Because such evidence is considered so important to an accurate assessment of credibility, Rule 5–616(b)(4) permits extrinsic evidence of bias whether or not the witness has been questioned about that issue.

the jury, or (2) the probative value of such an inquiry is substantially outweighed by the danger of undue prejudice or confusion. If the trial court decides to exclude circumstantial evidence of bias, it must state why it is prohibiting counsel from presenting such evidence to the jury. That discretionary ruling will be entitled to great deference, provided that it is based on a complete factual predicate.[5]

We commend the trial judge for his prompt decision to resolve the bias issue at an on the record *in limine* hearing. Error occurred, however, when the trial judge restricted defense counsel's inquiry of the witness. In this case, there was a great deal of circumstantial evidence reasonably suggesting the existence of an agreed upon *quid pro quo,* or reasonably suggesting that the witness did indeed hope for some consideration from the State. Given Thompson's residence at the time of the trial, and his obvious familiarity with the criminal justice system, the trial judge should have afforded defense counsel wider latitude at the *in limine* hearing. Defense counsel should have been allowed to ask any question that was of consequence to the issue of whether Thompson had an interest in helping the State obtain a conviction. *Johnson, supra,* 30 Md.App. at 516–517, 352 A.2d 371.

We are unable to affirm the ruling that insulated Thompson from questions directed at revealing his potential bias. As a result of the restrictions imposed on defense counsel at the *in limine* hearing, that ruling was based on an incomplete factual predicate. *Ebb* requires that the trial court give defense counsel a full and fair opportunity to establish the bias of a

---

5. The record does not contain the trial judge's explanation of why he prohibited defense counsel from presenting the jury with evidence of Thompson's potential bias. It is of no consequence, however, whether the trial judge concluded as a matter of law that the issue of Thompson's bias had not been generated, or concluded in the exercise of his discretion that the relevant evidence of Thompson's bias was substantially outweighed by other factors. Because of the erroneous restriction on what other questions could be asked of Thompson at the *in limine* hearing, there was an incomplete factual predicate for either conclusion.

State's witness.[6] Appellant was denied such an opportunity. Accordingly, we must reverse appellant's convictions and remand his case for a new trial.

**JUDGMENT REVERSED; CASE REMANDED FOR NEW TRIAL; COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**

---

**6.** Unfortunately, the able trial judge who presided in this case did not have the benefit of the *Ebb* decision.