*Rudy Ismael Manchame-Guerra v. State of Maryland*, No. 14, September Term, 2017

**CRIMINAL LAW — CONFRONTATION CLAUSE — MARYLAND RULE 5-616(a)(4) — PENDING CHARGES — FACTUAL PROFFER REQUIRED FOR INQUIRY** — The constitutional right of confrontation and Maryland Rule 5-616(a)(4) require that a defendant be afforded a threshold level of inquiry as to a State's witness's motive to testify falsely. Defense counsel, however, must proffer a sufficient factual foundation to permit inquiry into such motivation. The factual foundation may include circumstantial evidence of the witness's subjective hope for a benefit regarding the witness's own pending criminal charges. The proffer of a witness's pending charges in the same county as defendant's trial, in addition to further information—e.g., as here, that the detective investigating the underlying crime knew at the time he interviewed the witness to that crime that he had pending charges in an unrelated matter and that those charges, long after indictment, remained pending at the time of his testimony—created the requisite factual foundation to allow the expectation-of-benefit question under Rule 5-616(a)(4).

Circuit Court for Prince George's County
Case No. CT140125X
Argued: October 10, 2017

IN THE COURT OF APPEALS
OF MARYLAND

No. 14

September Term, 2017

RUDY ISMAEL MANCHAME-GUERRA

v.

STATE OF MARYLAND

Barbera, C.J.,
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

Opinion by Barbera, C.J.

Filed: January 23, 2018

On the night of July 14, 2012, Saul Felipe-Augustine was fatally shot outside an apartment in Langley Park in Prince George's County, Maryland. Rudy Ismael Manchame-Guerra, Petitioner, was later arrested on suspicion of murdering Mr. Felipe-Augustine. Petitioner was charged with first-degree murder and related offenses and in April 2015 was tried before a jury in the Circuit Court for Prince George's County. The jury acquitted Petitioner of first-degree murder and found him guilty of second-degree murder and related charges.

During Petitioner's April 2015 trial, the State called as a witness Edi Felipe, who testified that he had seen Petitioner shoot Mr. Felipe-Augustine. At the time he offered that testimony, Edi Felipe was facing charges of first- and fourth-degree burglary, misdemeanor theft, and carrying a concealed dangerous weapon. Those charges arose out of a 2013 crime—unrelated to the case before us—that occurred in Prince George's County and remained pending. Petitioner sought to cross-examine Edi Felipe as to whether, in return for his testimony, he expected or hoped for a benefit from the State in connection with those pending criminal charges. The trial court refused to permit Petitioner to pursue that line of questioning. Petitioner contends that, by so ruling, the court committed reversible error. For the reasons that follow, we agree.

## I.

### Facts and Procedural History

A. *The Evidence Offered at Trial*

On the evening of the fatal shooting in July 2012, Mr. Felipe-Augustine (hereinafter "the victim") went to an apartment in Langley Park where food and drinks were sold. The

victim was accompanied by his friend, Edi Felipe. Mr. Felipe testified as a witness for the State that, while at the apartment, the victim got into an argument with a man unknown to Mr. Felipe (and later identified as Petitioner by another witness). Mr. Felipe and the victim soon decided to leave. Mr. Felipe left the apartment first, walked partway down the staircase directly outside the apartment, then paused and looked back in the direction of the apartment. He saw the victim walk through the apartment doorway into the hall and Petitioner follow. According to Mr. Felipe, the victim turned around to face Petitioner, who then shot the victim once in the head at close range.

Petitioner was developed as a suspect and ultimately arrested in Nassau County, New York on September 5, 2013, in connection with the July 2012 killing. When interviewed by the police, Petitioner did not deny that he was present when the victim was shot; he denied, however, firing the fatal shot. According to Petitioner, the victim had pushed him, tried to hit him with a fire extinguisher, and drew a weapon, which discharged when Petitioner tried to wrest the gun from the victim's hand.

In December 2013, the police contacted Mr. Felipe. When interviewed by Detective Marcos Rodriguez, Mr. Felipe described the shooter as dark-haired and not very tall. Mr. Felipe testified at trial that he had twice viewed a photo array presented to him—once at the December 2013 interview with the police and again within two months of the start of Petitioner's trial. Mr. Felipe further testified that he did not identify anyone as the shooter.[1]

---

[1] A woman selling food and drink at the apartment testified as a witness for the State that, within a week of the victim's murder, she identified a photograph of Petitioner. It is not clear from the record whether she viewed the same photo array(s) that Mr. Felipe viewed.

B. *Defense Counsel's Attempted Impeachment of Mr. Felipe*

The State's theory of the case, based in large part on the testimony of Mr. Felipe, was that Petitioner mortally wounded the victim in an "execution style" shooting following their argument inside the apartment. The defense's theory was that the shooting was an accident. Crucial to the success of the defense's theory, therefore, was casting doubt upon the credibility of Mr. Felipe's testimony. Defense counsel sought to do that by questioning Mr. Felipe about criminal charges in an unrelated case that were pending at the time of his testimony at Petitioner's trial. In particular, defense counsel wanted to ask Mr. Felipe if he expected or hoped to obtain a benefit from the State in connection with those charges, in return for testimony favorable to the prosecution.

During a bench conference conducted prior to that attempted cross-examination, defense counsel informed the court that Mr. Felipe was then facing pending charges of first- and fourth-degree burglary, theft of property valued less than $1000, and unlawful carrying of a concealed weapon. Counsel cited Maryland Rule 5-616(a)(4), which allows impeachment through "questions that are directed at . . . [p]roving that the witness is biased, prejudiced, interested in the outcome of the proceeding, or has a motive to testify falsely." The bench conference included the following, beginning with an exchange between the court and defense counsel:

> [DEFENSE COUNSEL]: I thought it may be best to address with you, before the jury comes in, this witness, Edi Felipe, has an outstanding warrant for a first degree burglary theft case.
> I pulled the Statement of Charges. Originally, he was charged with fourth degree burglary, theft over a thousand dollars, [and] making a false

3

statement to police for not providing the correct name upon his arrest.[2]

A warrant, or an indictment, came down October 31st, 2013. A bench warrant issued November 1st, 2013. That is still outstanding.

I am seeking to ask Mr. Felipe questions about that, . . . under [Rule] 5-616(a)(4), to the—for the jury to make a judgment as to whether Mr. Felipe imagines for himself any positive result or benefit as a result of his testimony here . . . .

The particular reason, Judge, that I thought this was relevant in this case is because, I think the testimony of Detective Rodriguez will bear out, Detective Rodriguez was the first detective to interview Mr. Felipe, and that occurred December 19th, 2013.

So the bench warrant was already outstanding. The indictment already existed prior to Mr. Felipe ever giving a statement to the police about what he knew of the events of July 14th, 2012.

There is also a note in [the] detective notes from Detective Rodriguez that he was aware as of December 10th, 2013, that Mr. Felipe had this outstanding indictment.

Mr. Felipe, for the Court's knowledge, was arrested, taken to jail. The incident stems from June 2013. He posted a bond and was released at the District Court level, but about five months later, the case was indicted.

Defense counsel also presented an exhibit composed of five documents relating to the then-pending charges against Mr. Felipe: (1) a District Court Statement of Charges dated June 15, 2013; (2) a statement of probable cause accompanying the District Court Statement of Charges; (3) proof of the issuance of a District Court bail bond for $20,000 set on June 20, 2013; (4) an October 31, 2013, circuit court indictment listing charges of first-degree burglary, fourth-degree burglary, theft of property valued less than $1000, and concealing a dangerous weapon; and (5) an arrest warrant issued on November 1, 2013, for Mr. Felipe in connection with the burglary case.[3]

---

[2] The charge of making a false statement to police was included in the statement of charges, though not in the indictment.

[3] Petitioner also sought to cross-examine Mr. Felipe pursuant to Maryland Rule 5-608, which allows questions about prior acts that do not amount to a conviction but that impact

Defense counsel's proffer aimed to show that Mr. Felipe was biased by a motive to testify falsely due to his own pending charges in the same jurisdiction in which Petitioner was being tried. Counsel emphasized that Detective Rodriguez, who first spoke with Mr. Felipe in December 2013, knew about his pending charges; the first conversation happened roughly a year and a half after the murder; and those charges remained pending at the time of Petitioner's trial in April 2015.

The State responded that Detective Rodriguez had spoken to Mr. Felipe only about Petitioner's case, the State did not make any kind of deal or discuss any benefit to Mr. Felipe, and the pending charges against him were irrelevant:

> [PROSECUTOR]: What I can say for certainty is that no deal has ever been made. And actually, [Mr. Felipe] never made conversation about receiving a deal. And all discussions that he's had with Detective Rodriguez and the State's Attorney's Office [have] solely been in relation to what he observed on July 14th of 2012.

Defense counsel replied:

> [DEFENSE COUNSEL]: [I]t is for the jury to determine based on Mr. Felipe's answers whether or not he perceives that there may be a benefit to him from participating here as a witness for the State.
> And I would cite to the *Calloway* case . . . which indicates that the defense should be given wide latitude to cross-examine a witness on their anticipation of benefit in their own pending matters and that that is a matter for the jury to determine.

The court sustained the State's objection to defense counsel's request to question Mr. Felipe pursuant to Rule 5-616(a)(4). The court explained: "The Court is not going to

---

a person's credibility. The circuit court denied Petitioner's request and, on appeal, the Court of Special Appeals held that such denial was within the trial court's discretion. Petitioner no longer contests the trial court's denial of defense counsel's request to cross-examine Felipe pursuant to that Rule.

allow any impeachment that doesn't—that hasn't resulted in a conviction. There is no factual basis in the record at this time that the conduct alleged by this witness has actually occurred."

The jury returned a verdict of "not guilty" as to first-degree murder, "guilty" as to second-degree murder, and "guilty" as to use of a handgun in the commission of a felony. The court sentenced Petitioner to twenty-five years of incarceration for second-degree murder and a consecutive ten years of incarceration for use of a handgun.

C. *The Appeal*

Petitioner noted an appeal to the Court of Special Appeals, which affirmed the judgment of the circuit court in an unreported opinion. *Manchame-Guerra v. State*, No. 899, 2017 WL 193159, at *6 (Md. Ct. Spec. App. Jan. 18, 2017). One of Petitioner's claims before that court[4] was that the trial court erroneously prevented defense counsel from questioning Mr. Felipe regarding his pending charges. *Id.* at *4–5. The Court of Special Appeals rejected the claim, holding that defense counsel had not proffered a sufficient factual basis to permit the question under Rule 5-616(a)(4). *Id.* at *6. The Court of Special Appeals relied on *Peterson v. State*, 444 Md. 105 (2015), for the propositions that "'[p]ending charges are not . . . impeachment evidence,' and 'the existence of pending charges alone is not a sufficient predicate for [a question about bias or motive].'" *Id.* at *5 (quoting *Peterson*, 444 Md. at 135). The Court of Special Appeals did not detect in this case the "factual foundation" present in other cases where, for example, evidence was

---

[4] Petitioner also challenged a pre-trial ruling denying his motion to suppress the oral and written statements he had given to the police. He has not raised that challenge in this Court.

proffered that a witness had in fact already received a benefit.  *Id.* at *5–6 (citing *Calloway v. State*, 414 Md. 616, 638 (2010)).  The Court of Special Appeals therefore concluded that the trial court had not abused its discretion in precluding the inquiry.  *Id.* at *6.

Petitioner filed a petition for writ of certiorari, which we granted, *Manchame-Guerra v. State*, 453 Md. 31 (2017), to consider two questions:

> 1.  Did this Court's decision in *Peterson v. State*, 444 Md. 105 (2015), alter the threshold a factual proffer must satisfy to permit questioning of a witness's subjective expectation of a benefit under Md. Rule 5-616(a)(4)?

> 2.  Did the trial court err in prohibiting defense counsel from questioning the State's main witness about whether he subjectively expected a benefit in exchange for his statements and testimony in this case, where defense counsel proffered, *inter alia*, that the witness faced pending charges when he first spoke with police about the present case at the end of 2013, that the police investigating Petitioner's case also knew about the witness's pending charges as of December 2013, and that those charges were still pending at the time of trial in this case in April 2015?

**II.**

**The Constitutional Right of Confrontation and
Pertinent Maryland Rules on Witness Examination**

The Supreme Court of the United States, this Court, and other courts throughout the country have observed that cross-examination is the "greatest legal engine ever invented for the discovery of truth."[5]  The right of a defendant in a criminal case to cross-examine a witness for the prosecution is grounded in the Confrontation Clause of the Sixth

---

[5]  *Lilly v. Virginia*, 527 U.S. 116, 124 (1999) (quoting *California v. Green*, 399 U.S. 149, 158 (1970)); *Kentucky v. Stincer*, 482 U.S. 730, 736 (1987); *Peterson v. State*, 444 Md. 105, 122 n.3 (2015); *Myer v. State*, 403 Md. 463, 477 (2008); *see also, e.g.*, *State v. Outlaw*, 582 A.2d 751, 755 (Conn. 1990); *State v. Vargas*, 2001 UT 5, 20 P.3d 271, 277 n.7; *Vogel v. State*, 291 N.W.2d 838, 846 (Wis. 1980).

Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986); *Peterson*, 444 Md. at 122 n.4. Compliance with our federal and state constitutions requires the trial judge to allow the defense a "threshold level of inquiry" that puts before the jury "facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Martinez v. State*, 416 Md. 418, 428 (2010) (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974)). To ensure the right of confrontation, defense counsel must be afforded "wide latitude to cross-examine a witness as to bias or prejudices." *Martinez v. State*, 416 Md. at 428 (quoting *Smallwood*, 320 Md. at 307–08). Only when the constitutional threshold has been met may trial courts limit the scope of cross-examination "when necessary for witness safety or to prevent harassment, prejudice, confusion of the issues, and inquiry that is repetitive or only marginally relevant." *Peterson*, 444 Md. at 122–23 (quoting *Martinez*, 416 Md. at 428); *see Van Arsdall*, 475 U.S. at 679; *see also Smallwood v. State*, 320 Md. 300, 307–08 (1990) (stating that a trial court may limit cross-examination that "obscure[s] the trial issues and lead[s] to the factfinder's confusion").

Maryland Rules 5-616 and 5-611 are relevant to this subject. Rule 5-616 addresses witness impeachment and, relevant here, specifically authorizes an attack upon the credibility of a witness through questions designed to prove that the witness "has a motive to testify falsely":

> (a) **Impeachment by inquiry of the witness.** The credibility of a witness may be attacked through questions asked of the witness, including questions that are directed at:

* * *

(4) Proving that the witness is biased, prejudiced, interested in the outcome of the proceeding, or has a motive to testify falsely[.]

Rule 5-611 authorizes the trial judge to "exercise reasonable control over the mode and order of interrogating witnesses" and provides:

(a) **Control by court.** The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

(b) **Scope of cross-examination.** (1) Except as provided in subsection (b)(2), cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. Except for the cross-examination of an accused who testifies on a preliminary matter, the court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

(2) An accused who testifies on a non-preliminary matter may be cross-examined on any matter relevant to any issue in the action.

**III.**

**The Standard of Review**

We addressed in *Peterson* the standard by which an appellate court is to assess the propriety of a trial judge's restriction of a defendant's attempt to cross-examine a government witness about that witness's motive to testify falsely. The standard of review takes into account both the defendant's constitutional right of confrontation and the discretionary authority of the trial judge to assert "control over the mode and order of interrogating witnesses and presenting evidence":

In controlling the course of examination of a witness, a trial court may make a variety of judgment calls under Maryland Rule 5-611 as to whether particular questions are repetitive, probative, harassing, confusing, or the like. The trial court may also restrict cross-examination based on its understanding of the legal rules that may limit particular questions or areas

9

of inquiry. Given that the trial court has its finger on the pulse of the trial while an appellate court does not, decisions of the first type should be reviewed for abuse of discretion. Decisions based on a legal determination should be reviewed under a less deferential standard. Finally, when an appellant alleges a violation of the Confrontation Clause, an appellate court must consider whether the cumulative result of those decisions, some of which are judgment calls and some of which are legal decisions, denied the appellant the opportunity to reach the "threshold level of inquiry" required by the Confrontation Clause.

*Peterson v. State*, 444 Md. 105, 124 (2015).

We bear this standard in mind as we determine whether, in the present case, the trial judge erred in denying Petitioner the right to cross-examine Mr. Felipe as to whether he had a motive to testify falsely during direct examination. First, though, we examine previous applications of the principles we have so far discussed. In doing so, we answer the first question posed by Petitioner, which is whether our decision in *Peterson* "alter[ed] the threshold a factual proffer must satisfy to permit questioning of a witness's subjective expectation of a benefit under Md. Rule 5-616(a)(4)[.]"

**IV.**

**Criminal Case Law Applications of Rule 5-616(a)(4)**

Our cases demonstrate that questioning under Rule 5-616(a)(4) is not to be readily prohibited when the Confrontation Clause is at issue. To the contrary,

> [w]hen the trier of fact is a jury, questions permitted by Rule 5-616(a)(4) should be prohibited only if (1) there is no factual foundation for such an inquiry in the presence of the jury, or (2) the probative value of such an inquiry is **substantially** outweighed by the danger of undue prejudice or confusion.

*Calloway v. State*, 414 Md. 616, 638 (2010) (quoting *Leeks v. State*, 110 Md. App. 543, 557–58 (1996)).

10

In *Calloway*, the defendant was convicted of second-degree assault upon his infant son. The State moved *in limine* to prevent Calloway's cross-examination of a State's witness—Calloway's former cell-mate, Watson. Watson, still incarcerated at the time, had contacted the State's Attorney's Office and volunteered to testify about inculpatory statements Calloway had made to him. *Id.* at 637. At the *in limine* hearing, the defense sought to ask Watson if he expected a benefit from the State in return for his testimony. *Id*. at 625–30.

The defense proffered that, before Calloway's trial, Watson was released from incarceration, unrelated pending charges were *nol prossed*, and Watson did not face a violation of probation charge despite unequivocal evidence that he had violated probation in another case. *Id.* at 637. Watson testified at the *in limine* hearing that he did not expect a benefit in return for his testimony. *Id.* at 624–25. The trial court disallowed the requested cross-examination. *Id.* at 632–33.

We held that the trial court committed reversible error. We explained "that the issues of whether Watson placed the January 8, 2007 phone call in the hope of being released from detention, and whether he was testifying at trial in the hope of avoiding a violation of probation charge, should have been decided by the jury rather than by the Circuit Court." *Id.* at 637. We added:

> Because the issue is whether Watson had a hope that he would benefit from volunteering to testify against Petitioner, it is of no consequence that the State had not offered to make "any deal or bargain with Watson regarding his charges and testimony in [Petitioner's] case." It is also of no consequence that Watson's testimony before the jury would be consistent with his testimony at the *in limine* hearing.

11

*Id.* We determined that Calloway's proffer provided "a solid factual foundation for an inquiry into Watson's self interest." *Id.* at 639. We further determined that "the circumstantial evidence of Watson's self interest was not outweighed—*substantially* or otherwise—by the danger of confusion and/or *unfair* prejudice to the State." *Id.* We said in that regard:

> While it is clear that the trial judge is not obligated to allow cross-examination about every charge pending against a State's witness, Md. Rule 5-616(a)(4) grants the criminal defendant the right to question a State's witness about facts that are of consequence to the issue of whether "the witness is biased, prejudiced, interested in the outcome of the proceeding, or has a motive to testify falsely." Circumstantial evidence of a witness's self interest is admissible because, as the Supreme Court of North Dakota has stated, "even an untruthful man will not usually lie without a motive."

*Id*. at 633 (quoting *Gates v. Kelley*, 110 N.W. 770, 773 (N.D. 1906)). We further noted in *Calloway*:

> The issue of bias is often generated by circumstantial evidence, and does not disappear merely because the witness denies any reason to be biased. If such circumstantial evidence exists, *the trier of fact is entitled to observe the witness's demeanor as he or she responds to questions permitted by Rule 5-616(a)(4)*.

*Id*. at 638 (quoting *Leeks*, 110 Md. App. at 557). For this reason, questioning otherwise allowed by Rule 5-616(a)(4) is to be prohibited *only if* there is either no factual foundation for the question or the probative value derived from pursuing the "inquiry is **substantially** outweighed by the danger of undue prejudice or confusion." *Id*. (quoting *Leeks*, 110 Md. App. at 557–58).

Soon after *Calloway*, we decided *Martinez v. State*, 416 Md. 418 (2010). Martinez stood trial on charges of murder, attempted murder, and related crimes. *Id.* at 421. During

12

trial, the judge prohibited defense counsel from cross-examining the surviving victim, Mejicanos, about the State's dismissal of the witness's unrelated pending charges. *Id.* at 422–23. Defense counsel had proffered that the State *nol prossed* Mejicanos's unrelated pending charges a mere six days before he testified at a motions hearing, and that he was incarcerated at the time of trial pursuant to a writ of body attachment pending his testimony. *Id.* at 427. Those facts, we wrote, "presented circumstantial evidence of bias, motivated by self-interest." *Id.* at 431. As in *Calloway*, we held that the defense had proffered sufficient circumstantial evidence to lay the necessary factual foundation to permit cross-examination pursuant to Rule 5-616(a)(4). *Id.* at 431–32.

We explained that, "[w]hen a defendant seeks to cross-examine a State's witness to show bias or motive, 'the crux of the inquiry insofar as its relevance is concerned, is the witness's state of mind.'" *Id.* at 431 (quoting *Smallwood*, 320 Md. at 309); *see also Calloway*, 414 Md. at 637–38. We accepted, moreover, that the witness's state of mind regarding bias is "often generated by circumstantial evidence," which, after all, is typically the only means of showing state of mind. *Calloway*, 414 Md. at 638 (quoting *Leeks*, 110 Md. App. at 557). When circumstantial evidence exists that shows bias, "*the trier of fact is entitled to observe the witness's demeanor as he or she responds to questions permitted by Rule 5-616(a)(4)*." *Id.*

We concluded in *Martinez* that "there was a solid factual foundation for the defense's inquiry into Mejicanos's potential bias." 416 Md. at 431. We explained that, "circumstantial evidence that [the State's witness] was motivated by self-interest to testify falsely was highly probative of the defense's theory that his testimony was not to be

13

trusted," and "the State did not even suggest at trial that the defense's inquiry would confuse the jury or would unfairly prejudice the State, much less substantially so." *Id.* at 431–32. We held that the trial court erred in denying the proposed line of questioning because that ruling "prevented the jury from considering the possibility that Mejicanos had a motive to testify as he did, resulting in a violation of Petitioner's right of confrontation guaranteed by the United States and Maryland constitutions." *Id.* at 432.

Our decision in *Dionas v. State*, 436 Md. 97 (2013), is to like effect. The defendant was facing multiple counts of second-degree murder, first-degree assault, and associated crimes. *Id.* at 100. Much as in *Calloway* and *Martinez*, the defense sought, without success, to cross-examine a State's witness as to whether, in return for his testimony, he had any hope of leniency from the State in connection with a pending, unrelated violation of probation charge. *Id.* at 102. The defense proffered that a different judge had granted the witness's request to continue the unrelated violation of probation hearing as well as his request to be released on home detention pending that hearing. *Id.* at 101–02. The trial judge disallowed the requested cross-examination. *Id.* at 102–03.

We agreed with the Court of Special Appeals, *Dionas v. State*, 199 Md. App. 483, 509 (2011), that the trial court erred in disallowing the requested cross-examination. *Dionas*, 436 Md. at 118, 121. Indeed, the State conceded in its argument before this Court that the trial court had erred. *Id.* at 107. We were left then only to decide whether the trial court's error in denying such cross-examination by the defense was harmless beyond a reasonable doubt. *Id.* at 107–08. Observing that "the right to cross-examine a witness on matters and facts that are likely to affect his or her credibility is a fundamental concept in

14

our system of jurisprudence," *id.*, we concluded that the court's error was not harmless, requiring that the judgment of the circuit court be reversed and the case be remanded for a new trial, *id.* at 118, 121.

The facts of *Peterson* led us to a different conclusion. The defense had sought to cross-examine a State's witness as to whether, in return for his testimony, he expected a benefit as to pending charges against him. 444 Md. at 126–29. The defense proffered that the witness had an unspecified charge pending in Prince George's County, a pending misdemeanor charge in Fairfax, Virginia, and an alleged violation of probation in Virginia. *Id.* at 127.

The trial court disallowed the inquiry. *Id.* at 131. We held that, to the extent the claims were preserved for appellate review, the trial court's disallowance of the requested inquiry was not an abuse of the court's discretion and did not run afoul of Peterson's constitutional right of confrontation. *Id.* at 114, 141–42.

We took into account, with regard to the "factual foundation" requirement, that "pending charges themselves are not admissible to attack credibility. What is admissible, however, in the case of a witness testifying for the State in a criminal case, is whether the witness expects some benefit with respect to pending charges as a result of testimony on behalf of the prosecution." *Id.* at 135. We explained:

> As with any question permitted by Rule 5-616(a)(4) suggesting that a witness is biased or has a motive to testify falsely, there must be a factual foundation for the question. The pending charges are not the impeachment evidence; rather, they are part of the factual predicate for asking the permitted question about bias or motive. But the existence of pending charges alone is not a sufficient predicate for such a question.

15

*Id*.; *see also id*. at 135, 141 ("Under the relevant case law, pending charges alone are not an adequate foundation" but nevertheless are "part of the factual predicate for asking the permitted question about bias or motive.").

Confirming our prior case law, we stated that "[t]here must be some evidence," which could be "circumstantial (*e.g.*, release of witness from custody [*Calloway*], dismissal of charges [*Martinez* and *Calloway*], a decision to forgo charges [*Calloway*], postponement of disposition of a violation of probation charge [*Dionas*]) that the witness has an expectation of benefitting from the testimony with respect to the pending charges." *Peterson*, 444 Md. at 135–36 (footnotes citing to bracketed cases omitted). We noted, too, that a witness's pending charges in the same county as a defendant's trial "could obviously help provide a circumstantial factual foundation for asking a question on expectation of benefit," *id.* at 137, and that "[t]he factual predicate for the question becomes attenuated when the charges are pending in another jurisdiction, particularly another state, or arose after the witness had provided the prosecution with the same information as contained in his testimony," *id.* at 136.

We held that Peterson had not preserved for appellate review his claim that the court erred in not allowing him the opportunity to cross-examine the State's witness because "defense counsel never attempted to ask [the State's witness] about an expectation of benefit with respect to pending Maryland charges." *Id.* at 138. We added, though, that, even had defense counsel attempted to cross-examine the State's witness for bias, it would not have been an abuse of the trial court's discretion to disallow such questioning. Defense counsel had proffered merely that the State's witness had "an unspecified pending charge"

16

that occurred in Prince George's County—the same county where the crimes at issue at Peterson's trial had occurred. *Id.* at 127. It therefore was "not at all clear" to us "that defense counsel could have pointed to additional circumstantial evidence of favorable treatment by Maryland prosecutors—as was the case in *Martinez* and *Calloway*—in addition to the existence of pending charges alone." *Id.* at 138.

We added that other cross-examination of the witness sufficed to establish Peterson's constitutional right of confrontation. During cross-examination, defense counsel questioned the witness about his apparent involvement in the underlying drug transaction, his inconsistent statements regarding his observations of the shooting of the victim, and whether he held a grudge against Peterson at the time of the crime. *Id.* at 130. We said, in that regard, "given the extent to which the defense was able to cross-examine [the witness] freely on alleged reasons he might be biased against Mr. Peterson or might shape his testimony adverse to the defendant, the defense cross-examination satisfied the 'threshold of inquiry' into the witness's potential bias and motive to testify falsely." *Id.* at 142.

We conclude from this synopsis of our decisions that the answer to Petitioner's first question is "no": *Peterson* did not alter the threshold for satisfaction of the requisite factual foundation for inquiry under Rule 5-616(a)(4). Rather, *Peterson* clarifies that the threshold for such inquiry is *not* met with the mere proffer of the words "pending charges," uttered in a vacuum and without precision as to the rationale for the proposed inquiry. It would be difficult—and likely dangerous—to attempt to prescribe the minimum factual foundation that must be included in a Rule 5-616(a)(4) proffer, and we do not attempt that here.

17

What we re-emphasize here is that the proffer is to be viewed from the perspective of the witness: i.e., the witness's expectation or hope for a benefit in return for testimony favorable to the prosecution. *Martinez*, 416 Md. at 431; *Calloway*, 414 Md. at 637–38; *Smallwood*, 320 Md. at 309–10. Moreover, though it is for the trial court to make that determination in the first instance, the trial "judge must allow a defendant wide latitude to cross-examine a witness as to bias or prejudices." *Smallwood*, 320 Md. at 307–08; *see also Peterson*, 444 Md. at 123; *Martinez*, 416 Md. at 428; *Calloway*, 414 Md. at 638. In none of the Rule 5-616(a)(4) cases discussed above have we deviated from that proposition, which is grounded in the right of confrontation afforded by our federal and state constitutions.

## V.

### The Present Case

We turn, now, to answer the second question presented by Petitioner, which is whether the trial judge committed reversible error in denying Petitioner the opportunity to ask Mr. Felipe whether he expected or hoped for a benefit in return for his direct testimony in the State's case. The answer to that question turns on whether Petitioner's proffer sufficed to establish the factual foundation required for compliance with Rule 5-616(a)(4). The parties' dispute focuses on whether the proffered facts surrounding Mr. Felipe's pending charges established that factual foundation.

Petitioner argues first that the existence of Mr. Felipe's pending charges in the same jurisdiction as Petitioner's trial, standing alone, was enough to create the "factual foundation" to permit cross-examination as to whether Mr. Felipe had a motive to testify

18

falsely. Alternatively, Petitioner argues that the additional facts proffered by defense counsel supplied the factual foundation required for compliance with Rule 5-616(a)(4), as explicated in *Calloway* and its progeny. Petitioner points out that defense counsel proffered that Mr. Felipe spoke to police in December 2013, after his indictment on burglary and related charges in October 2013; that he was released on bond on those charges; that Detective Rodriguez knew of Mr. Felipe's pending charges when interviewing him in December 2013; and that the charges remained pending at the time of Petitioner's trial in April 2015. Also pertinent is that, notwithstanding the absence of an agreement, the State acknowledged to the trial judge having discussions with Mr. Felipe about Petitioner's case before trial.

The State counters that the trial court properly exercised its discretion to prohibit defense counsel from asking Mr. Felipe whether he expected or hoped for a benefit in return for his testimony favorable to the prosecution. The State asks this Court not to disturb our observation in *Peterson* that "the existence of pending charges alone is not a sufficient predicate for such a question." 444 Md. at 135. *Peterson* should be followed as a matter of *stare decisis*, the State argues, because it confirmed settled Maryland law that more than mere pending charges is needed to allow inquiry into bias. With respect to Petitioner's alternative argument that defense counsel proffered enough additional facts to satisfy Rule 5-616(a)(4), the State responds that "none of the facts that Manchame-Guerra marshals suggests, alone or in combination, that Felipe had 'an expectation of benefitting from the testimony with respect to the pending charges.'" The State adds that, even if the facts suggested some minimal expectation of a benefit, the trial court retained "wide

19

latitude" to impose reasonable limits on cross-examination under this Court's decision in *Smallwood*, 320 Md. at 307.

Petitioner has the better part of the dispute. We note preliminarily that Petitioner presented no direct evidence that Mr. Felipe had a motive to testify falsely—that there was in place an agreement between the State and him that, in return for his testimony, he would receive a benefit in connection with his pending charges. Such direct evidence, however, is not required, as our case law demonstrates. *See Peterson*, 444 Md. at 135–36; *Martinez*, 416 Md. at 430–31; *Calloway*, 414 Md. at 638.

Petitioner proffered sufficient circumstantial evidence that, viewed from Mr. Felipe's perspective, could have led him to expect or hope for a benefit in connection with his pending charges in return for his testimony. We begin with the fact that Mr. Felipe's pending criminal charges were in Prince George's County, where the killing for which Petitioner was standing trial occurred. We have recognized that pendency of charges in the same county can "obviously help provide a circumstantial factual foundation for asking a question on expectation of benefit." *Peterson*, 444 Md. at 137. Petitioner, moreover, did not leave the proffer at that. Petitioner provided detail concerning the nature of those charges then-pending against Mr. Felipe: first- and fourth-degree burglary, theft of property valued less than $1000, and unlawful carrying of a concealed weapon. Petitioner also pointed out that, by the time of his trial, the charges against Mr. Felipe had been pending since 2013—roughly 18 months. Petitioner added that the detective involved in the underlying murder investigation knew of those pending charges when he interviewed Mr. Felipe about the killing.

20

Defense counsel's proffer stands in sharp contrast to, for example, the vague "pending charges" proffer we examined in *Peterson*. Nor do we have in the present case, as we did in *Peterson*, a delayed proffer—made only after cross-examination of the witness had concluded. *See* 444 Md. at 138. Petitioner's proffer was timely, detailed, and focused on specific charges in Prince George's County, dating back 18 months and still pending against Mr. Felipe at the time of Petitioner's trial, also in Prince George's County. We conclude that Petitioner laid the requisite factual foundation to permit him to ask Mr. Felipe whether he had an expectation of benefit in return for his testimony favorable to the prosecution's theory of the case.

As discussed above, the test we have established for inquiry under Rule 5-616(a)(4) mandates that the expectation-of-benefit inquiry "should be prohibited only if (1) there is no factual foundation for such an inquiry in the presence of the jury, or (2) the probative value of such an inquiry is **substantially** outweighed by the danger of undue prejudice or confusion." *Calloway*, 414 Md. at 638. We have determined that Petitioner satisfied the first part of that test. The State, moreover, does not contest satisfaction of the second part. Indeed, the State does not argue that the probative value of this inquiry would have been "outweighed at all, much less *substantially* so, by the danger of confusion to the jury or unfair prejudice to the State." *Martinez*, 416 Md. at 431; *Calloway*, 414 Md. at 638.[6]

---

[6] All the above said, it is evident from this record that the trial court's ruling in response to Petitioner's proffer did not comport with Rule 5-616(a)(4). The court ruled, in full: "The Court is not going to allow any impeachment that doesn't—that hasn't resulted in a conviction. There is no factual basis in the record at this time that the conduct alleged by this witness has actually occurred." At best, this ruling only addressed Rule 5-608(b)

In summary, the court erred in denying Petitioner the requested cross-examination of Mr. Felipe, pursuant to Rule 5-616(a)(4), as to whether he had a motive to testify falsely. The State, to its credit, does not attempt to argue that the error was harmless. Petitioner is therefore entitled to have the judgment of conviction vacated and the case remanded for a new trial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND REMAND THE CASE TO THAT COURT FOR A NEW TRIAL. COSTS TO BE PAID BY RESPONDENT.**

---

(impeachment with the witness's own prior conduct not resulting in a conviction), which Petitioner argued at trial but does not press here. *See supra*, note 3. No part of the court's ruling addressed the terms of Rule 5-616(a)(4) regarding a witness's bias, prejudice, interest in the outcome of the proceeding, or motive to testify falsely.