775 A.2d 385

**Dorian J. MARTIN,**

v.

**STATE of Maryland.**

**No. 123, Sept. Term, 2000.**

Court of Appeals of Maryland.

July 9, 2001.

694

Nancy S. Forster, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Celia Anderson Davis, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, Judge.

Petitioner, a former Baltimore City police officer, appeals from his conviction for theft under the value of $300 and misconduct in office. He complains that the trial court abused its discretion in refusing to permit his attorney to cross-examine the complaining witness as to whether he had hired an attorney to file a lawsuit on his behalf against Baltimore City. We agree with petitioner and shall reverse the judgments of conviction. We shall hold that the trial court's denial of cross-examination regarding contemplated civil action was error and that the error was not harmless beyond a reasonable doubt.

## I.

Dorian Martin, petitioner, was indicted by the Grand Jury for Baltimore City for the offenses of robbery, theft and misconduct in office. A jury acquitted him of the robbery, but convicted him of theft under the value of $300 and misconduct in office.

Petitioner is a former police officer in Baltimore City. Felix Guevera was the complaining witness in the case. The incident that led to the criminal charges occurred while petitioner was an on-duty police officer. Petitioner's version of the incident differs markedly from Guevera's version.

At trial, Felix Guevera testified that on the evening of December 28, 1998, while he was walking home from work at about 8:30 p.m., he was approached on a residential street corner by petitioner, who was dressed in full police uniform. Upon request for identification, he handed petitioner his wallet. Petitioner then searched his pockets, finding $300 in U.S. currency in Guevera's front pocket. Petitioner took the $300, including a $100 bill, and placed it into his own pocket, then got into his police van and drove away. Through a friend, Guevera reported the incident to the police later that evening.

At the end of his shift, petitioner was detained at the police station and questioned about the incident by his superiors. The officers told him of Guevera's accusations against him, and he denied all involvement in the incident. In response to the officers' questions as to whether he had any money on him, he removed $347 from his pocket, including a $100 bill. He said that the money belonged to him and was to be used to pay for day care for his child. Petitioner denied Guevera's allegations, claiming that the money was his own. District commander Major George Klein testified that he informed petitioner of his mandatory suspension, advised him of his rights under the Law Enforcement Officers' Bill of Rights (LEOBR), and contacted counsel for him. Petitioner spoke to an attorney and resigned from the police force immediately following the conclusion of the phone conversation. The State placed his signed resignation form into evidence over defense objection.

Petitioner testified on his own behalf at trial. He stated that he was driving the police van that night when he saw several males standing on the corner, near a bar. He rolled down the window and told the men "we will have to clear this corner." He noticed that several men walked away, but that

Guevera did not leave. Martin then got out of the police van and approached Guevera. He told Guevera that he had to leave the area; at that time, Guevera "pulled out a wad of money and put it in my face, waved it in my face, and in broken English said, 'I can buy and sell you.' " Martin testified that he felt "disrespected" and acting "out of poor judgment," he took the money out of Guevera's hand. Martin then received a radio call for a "wagon run," and he left the area. He testified that, as he pulled away, he said to himself, "Oh shit, I got this guy's money." He returned to the area in an attempt to find Guevera, but he was unsuccessful.

Petitioner also testified that, when questioned by his superiors, he denied Guevera's allegations because of his fear that "when a black policeman is in a situation" similar to his, he "would not be given a fair shake in the end." He testified that Major Klein told him that Guevera refused to press charges. Major Klein also advised him that if he were to resign, "that would pretty much be the end of it, it would not be heard of." With his resignation, petitioner believed that he "pretty much could go to another police department and possibly get picked up."

Petitioner was convicted of theft under $300 and misconduct in office. He was sentenced to two concurrent terms of eighteen months imprisonment, all but six months of which were suspended, with one year supervised probation.

Petitioner noted a timely appeal to the Court of Special Appeals, which affirmed the judgments of conviction in an unreported opinion. This Court issued a writ of certiorari. *See Martin v. State,* 362 Md. 359, 765 A.2d 142 (2001).

## II.

Petitioner argues that the trial court abused its discretion in prohibiting cross-examination regarding Guevera's intent to file a civil lawsuit against the city, thereby preventing the defense from exposing to the jury facts from which it might assess the witness's credibility and to show the jury that the witness was biased and had a motive to fabricate. The State

argues that no lawsuit had been filed and that mere contemplation of a civil action is not relevant to the witness's credibility.

The Sixth Amendment to the United States Constitution[1] and Article 21 of the Maryland Declaration of Rights[2] guarantee a criminal defendant the right to cross-examine adverse witnesses, including "the right to cross-examine a witness about matters which affect the witness's bias, interest or motive to testify falsely." *Marshall v. State*, 346 Md. 186, 192, 695 A.2d 184, 187 (1997); *see Merzbacher v. State*, 346 Md. 391, 411–12, 697 A.2d 432, 442 (1997); *cf.* Maryland Rule 5–616(a)(4). The trial court has broad discretion in determining the scope of cross-examination, and we will not disturb the exercise of that discretion in the absence of clear abuse. *See State v. Hawkins*, 326 Md. 270, 277, 604 A.2d 489, 493 (1992). Nonetheless, the discretion is not unlimited, and "a cross-examiner must be given wide latitude in attempting to establish a witness' bias or motivation to testify falsely." *Merzbacher*, 346 Md. at 413, 697 A.2d at 443. The appropriate test to determine abuse of discretion in limiting cross-examination is whether, under the particular circumstances of the case, the limitation inhibited the ability of the defendant to receive a fair trial. *See Ebb v. State*, 341 Md. 578, 587–88, 671 A.2d 974, 978 (1996). In assessing whether the trial court abused its discretion in limiting the cross-examination of the attorney who wished to show bias or motives to fabricate, we look to see whether the jury had sufficient information to make a discriminating assessment of the particular witness's possible

---

**1.** The Sixth Amendment states, in relevant part, as follows:
> In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him....

U.S. CONST. amend. VI.

**2.** Article 21 of the Maryland Declaration of Rights states, in relevant part, as follows:
> [I]n all criminal prosecutions, every man hath a right ... to be confronted with the witnesses against him....

MD. CONST. DECL. OF RIGHTS art. 21.

motives for testifying falsely in favor of the State. *See Marshall*, 346 Md. at 194, 695 A.2d at 188.

■ At trial, defense counsel asked Guevera, the sole witness to the incident, whether he had hired a lawyer to sue Baltimore City. The State objected to the inquiry. Defense counsel argued that, even though no lawsuit against the city had yet been filed,[3] the fact that the victim had hired a lawyer to sue the city was evidence of motive to lie. The trial court sustained the objection on the ground that, in the absence of the actual filing of a civil suit, intent to sue was not relevant to the bias or motivations of the witness.

The general rule is that evidence of a pending lawsuit by a witness in a criminal prosecution against the accused,[4] arising from the same set of circumstances as the instant criminal prosecution, may reveal a potential source of bias, interest in the outcome of the proceedings, or motive to testify falsely. *See Merzbacher*, 346 Md. at 414, 697 A.2d at 443; *see also Villaroman v. United States*, 184 F.2d 261, 262 (D.C.Cir.1950); *Malone v. State*, 358 So.2d 490, 492 (Ala.Crim.App.1978); *Wooten v. State*, 464 So.2d 640, 641 (Fla.Dist.Ct.App.1985); *State v. Kellogg*, 350 So.2d 656, 657–58 (La.1977); *State v. Whitman*, 429 A.2d 203, 205 (Me.1981); *Commonwealth v. Marcellino*, 271 Mass. 325, 171 N.E. 451, 452 (1930); *People v. Drolet*, 157 Mich. 90, 121 N.W. 291, 291–92 (1909); *State v.*

---

**3.** It appears from the colloquy at the bench that although no lawsuit had yet been filed, Guevera provided the city with written notice of intent to sue, pursuant to the Local Government Tort Claims Act, Maryland Code (1987, 1998 Repl.Vol., 2000 Cum.Supp.) § 5–304 of the Courts & Judicial Proceedings Article.

**4.** This rule has been extended to include lawsuits against the employer of the accused for actions committed during the scope of employment. *See, e.g., Wooten v. State*, 464 So.2d 640 (Fla.Dist.Ct.App.1985); *State v. Ferguson*, 5 Ohio St.3d 160, 450 N.E.2d 265 (1983); *State v. Whyde*, 30 Wash.App. 162, 632 P.2d 913 (1981). The rule also has been applied where the lawsuit is against some other third party for negligence, on the ground that the pecuniary interest of the witness remains the same, regardless of the target of the civil suit. *See, e.g., Reeves v. State*, 432 So.2d 543 (Ala.Crim.App.1983); *Payne v. State*, 541 So.2d 699 (Fla.Dist. Ct.App.1989); *Cunningham v. State*, 240 Ga.App. 92, 522 S.E.2d 684 (1999).

*Williams,* 16 N.J.Super. 372, 84 A.2d 756, 760 (App.Div.1951); *Cox v. State,* 523 S.W.2d 695, 700 (Tex.Crim.App.1975); 3A John H. Wigmore, *Evidence* § 949, at 788 (Chadbourn rev. 1970); W. Foster, Annot., *Criminal Law—Evidence—Pending Civil Suit,* 98 A.L.R.3d 1060 (1980 & Supp.2000).

The State argues that because the lawsuit in this case was at best only a contemplated action, the trial court did not abuse its discretion in refusing to permit defense counsel to question the prosecuting witness about whether he intended to file a lawsuit. While we have not previously commented on whether *contemplated* civil lawsuits are relevant in examining witness bias, the majority view in this country is that questions on cross-examination to a witness regarding a contemplated civil action should be permitted. *See State v. Arlington,* 265 Mont. 127, 875 P.2d 307, 316 (1994) (adopting majority view that cross-examination as to contemplated civil lawsuits against the defendant is allowed on cross-examination). We find no meaningful distinction between contemplated and commenced lawsuits for cross-examination purposes. *See Wooten,* 464 So.2d at 642 (stating that, although litigation was merely contemplated, it is a distinction without a difference); *People v. Richmond,* 35 Mich.App. 115, 192 N.W.2d 372, 375 (1971) (stating that, "[e]ven in the absence of precedents dealing with contemplated suits, the rationale is the same as commenced suits").

Just as the formal commencement of a civil lawsuit may establish witness bias, action taken in contemplation of the commencement of a civil lawsuit against a criminal defendant by a prosecuting witness is relevant to the witness's credibility and may be evidence that a witness has an interest in the outcome of the trial. *See People v. Bruno,* 77 A.D.2d 922, 431 N.Y.S.2d 106, 107 (1980). This includes evidence of consultation with, or hiring of, an attorney. *See Wooten,* 464 So.2d at 642; *State v. McLemore,* 99 Kan. 777, 164 P. 161, 163 (1917); *State v. Doughty,* 399 A.2d 1319, 1324 (Me.1979); *People v. Richmond,* 35 Mich.App. 115, 192 N.W.2d 372, 374 (1971); *State v. Decker,* 161 Mo.App. 396, 143 S.W. 544, 544–45 (1912);

*State v. White,* 286 N.C. 395, 211 S.E.2d 445, 451 (1975); *State v. Ferguson,* 5 Ohio St.3d 160, 450 N.E.2d 265, 269–71 (1983). Written notice of intent to sue, when required by statute as a prerequisite to filing suit, may also be sufficient to establish evidence of a contemplated lawsuit. *See Cunningham v. State,* 240 Ga.App. 92, 522 S.E.2d 684, 687–88 (1999). We adopt the majority view in this country and hold that the proper approach is to allow cross-examination of whether a witness has contemplated a civil action against the defendant.

In *State v. Doughty,* 399 A.2d 1319 (Me.1979), the Supreme Court of Maine observed that the rule that the pendency of a civil action filed by a witness in a criminal case against the accused includes the case "where no civil action has been commenced, but such a suit is or may be contemplated, as in the case of consultation with, or hiring of, an attorney." *Id.* at 1323. The court explained:

> The intent of a person to realize a monetary gain out of an incident which has become the subject of litigation, as may be evidenced by pendency of a civil action for damages *or by anticipatory preparation therefor* through lawyer consultation or hiring, is an individualized fact having a logical tendency to show bias against the other party to the reference litigation, hostility to his cause and an interest adverse to him in the outcome of the legal dispute. Facts showing that the State's prosecuting witness may have been actuated by personal considerations instead of altruistic interest generated solely from motives in the public interest to bring a criminal to justice ... may be viewed as having some probative value in proof not only of such bias and hostility, but also of a motive to give false testimony.

*Id.* at 1324 (emphasis added). This proposition finds wide support among other jurisdictions. *See, e.g., Villaroman,* 184 F.2d at 261–62; *People v. Morton,* 213 Mich.App. 331, 539 N.W.2d 771, 773 (1995); *Arlington,* 875 P.2d at 315–16; *State v. McFarlane,* 279 S.C. 327, 306 S.E.2d 611, 613 (1983); *Ferguson Seed Farms v. McMillan,* 18 S.W.2d 595, 598–99

(Tex.Comm'n App.1929, holding approved).[5]

The question posed by defense counsel here was whether the witness had hired an attorney to file a civil lawsuit against petitioner, arising from the same set of circumstances as the criminal prosecution in which the witness was testifying. We hold that the trial court erred in refusing to permit defense counsel to attempt to impeach the credibility of the prosecuting witness by eliciting testimony regarding a contemplated lawsuit.

■ The State contends that any error is harmless. While conceding that Guevera's testimony was important to the prosecution's case, the State argues that the testimony was "almost entirely undisputed" and, moreover, corroborated by the admissions of petitioner. The State further argues that defense counsel was permitted to cross-examine the witness at length and that the case against petitioner was strong overall.

■ To find that the error was harmless, we must be " 'satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict.' " *Smallwood v. State*, 320 Md. 300, 308, 577 A.2d 356, 360 (1990) (quoting *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665, 678 (1976)). We are not persuaded beyond a

---

5. The State relies on three cases to support a contrary rule, but each is distinguished easily from the case *sub judice. Duncan v. City of Birmingham*, 384 So.2d 1232 (Ala.Crim.App.1980), and *State v. Moore*, 311 N.C. 442, 319 S.E.2d 150 (1984), affirmed not the *exclusion* of testimony concerning contemplated lawsuits, but merely the trial court's discretion in *limiting* the extent of questioning permitted beyond the existence and nature of contemplated suits. *See Duncan*, 384 So.2d at 1238; *Moore*, 319 S.E.2d at 156; *cf. State v. White*, 286 N.C. 395, 211 S.E.2d 445, 451 (1975) ("Indisputably, the fact that a witness had employed private counsel to prosecute the case against defendant has a logical tendency to show the witness' bias against him."). In *State v. Whaley*, 389 N.W.2d 919, 924–25 (Minn.Ct.App.1986), the question was not whether the witness had hired an attorney, but merely if the witness had *considered* suing the defendant. *Cf. State v. Underwood*, 281 N.W.2d 337, 340–41 (Minn.1979) (holding that a witness may be cross-examined regarding contemplated lawsuit, where witness had indeed consulted with an attorney regarding civil suit).

reasonable doubt that the jury would have reached the same verdict had the defense been permitted to undermine the credibility of the witness, Guevara.

The jury had to decide whether to accept petitioner's version of the events or Guevera's version. Thus, credibility was a central issue in the case. Since Guevera's retaining a lawyer to bring a civil lawsuit was relevant to his credibility, it was error to preclude defense counsel from cross-examining him about it. Guevera testified that petitioner simply took $300 from the Guevera's pocket, placed it in his own pocket, and left. Petitioner's version of events, however, is that Guevera taunted him verbally and waved the money in his face, that he then took the money from Guevera's hand in anger, and that he forgot momentarily that he had the money when he responded to a call to duty. These versions of the incident differ significantly, and the jury's assessment of who was telling the truth was critical. Petitioner was denied the opportunity to establish the bias or pecuniary interest of the witness. Thus, the complete denial to petitioner of an opportunity to impeach the witness's credibility was not harmless error.

### III.

Petitioner raised a second allegation of error in his certiorari petition. He argues that the trial court erred in permitting the State to introduce evidence that when petitioner was accused of robbery, he consulted with an attorney and, immediately following consultation with counsel, he resigned from the police force. We will address his contention for the guidance of the trial court in the event of a retrial.

Prior to trial, defense counsel moved *in limine* to exclude evidence that petitioner consulted with an attorney and, following his consultation, he resigned from the police department. The trial court excluded evidence that petitioner consulted with counsel, but reserved ruling as to the admissibility of petitioner's resignation. The court cautioned defense coun-

sel that if he "opened the door" to the counsel evidence, the State could properly respond to it.

During direct examination of Major Klein, the State sought to introduce evidence that petitioner had resigned from the police force immediately following his consultation with counsel. Defense counsel objected. The State requested that the court rule on the reserved portion of the motion *in limine*. The trial court reconsidered the admissibility of the evidence covered by the motion *in limine* and admitted the evidence of petitioner's consultation with counsel and his subsequent resignation from the force.

The court based its ruling on two grounds. First, the court ruled that because the primary dispute in the case was petitioner's state of mind at the time of the event, and particularly whether petitioner had intended to deprive Guevera of the money permanently, petitioner's conduct in response to the allegation was relevant and, on balance, it was more probative of his state of mind than prejudicial. The trial court stated:

It is in evidence before the jury that Major Klein advised the Defendant that he was suspended as a result of [Guevera's] allegations. We know very well the records of what next occurred was that the Major was required to advise the Defendant that he was suspended and that he had some options and those options included according to police department regulations that he could resign. The Defendant immediately afterward spoke to his attorney and resigned.... I find that the Defendant's reactions, his comments, his conduct, at the time of the allegations were made are relevant to these proceedings. Relevance is not an issue. The defense finds that his resignation is that the Defendant resigned immediately after he was advised that this was an option and shortly after talking to his attorney is so prejudicial. The relevance issue required by law is so prejudicial as that it outweighs any probative value.... I believe it is a matter for the jury to determine whether it is sufficient to give to it on that ground, the objection is overruled.

Second, the trial court found that, in light of the defense's opening statement—in which defense counsel told the jury of petitioner's life-long desire to become a police officer, and that the police department was using petitioner as a "sacrificial lamb" for the Hispanic community and that the department "abandoned" him—evidence of his resignation from the police force within minutes of his consultation with defense counsel was relevant for the purposes of rebuttal. The trial court stated:

I do believe that another ground to overrule the objection is that if the Defendant had put so much time and energy and effort into being a policeman and then within a matter of minutes after these allegations were made, he then resigned, then these are issues again for the jury to weigh as to what circumstances would lead someone who claims his innocence and who admitted to wanting to be nothing but a police officer and that he was going to be used by the Department as a sacrificial lamb and that he had been abandoned by the Department and yet he resigns all within just a few minutes of the allegations being made. Again, I feel that these are sufficient grounds for the jury to give great weight as to the Defendant's state of mind at the time he resigned from the police department.

Petitioner contends that evidence of his consultation with an attorney and subsequent resignation from the police department was not relevant and, thus, erroneously admitted by the trial court. Petitioner argues that neither event was probative of his state of mind and that reference to consultation with an attorney was prejudicial and violated his constitutionally protected right to counsel. The State argues that evidence of petitioner's resignation was probative of his intent and that evidence of petitioner's consultation with an attorney was admitted properly to counter allegations made by defense counsel during opening statements.

■ Determination of relevancy ordinarily is left to the sound discretion of the trial court, but may be reversed upon clear showing of an abuse of discretion. *See Dupree v. State,*

352 Md. 314, 324, 722 A.2d 52, 56 (1998); *Merzbacher*, 346 Md. at 404–05, 697 A.2d at 439. Relevant evidence is evidence that tends to be probative of a fact at issue in the case. *See* Maryland Rule 5–401; *see also Snyder v. State*, 361 Md. 580, 591, 762 A.2d 125, 131 (2000). Evidence that is relevant generally is admissible. *See* Maryland Rule 5–402. Relevant evidence may, however, be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* Maryland Rule 5–403; *see also Snyder*, 361 Md. at 592–93, 762 A.2d at 132; *Merzbacher*, 346 Md. at 405, 697 A.2d at 439.

 Evidence of a defendant's behavior after commission of a crime may be relevant and admissible as tending to show the defendant's consciousness of guilt. *See Snyder*, 361 Md. at 593, 762 A.2d at 132. We cannot agree with petitioner that the timing of his resignation, following so closely after learning of the allegations against him, lacks any tendency to support such an inference of guilt. Nor is it clear that the probative value of his resignation, standing alone, is substantially outweighed by the danger of unfair prejudice. We find no clear abuse of discretion in the trial court's ruling that petitioner's resignation met the threshold relevancy for admissibility and proper consideration by the jury.

 In general, evidence of consultation with an attorney is not probative of a defendant's guilt. We find the analysis presented by then Chief Judge Wilner in *Hunter v. State*, 82 Md.App. 679, 573 A.2d 85 (1990), to be instructive:

In seeking legal advice or representation, the person may well believe himself culpable of some tortious or criminal conduct. But he may just as well believe himself entirely innocent or only partly culpable, or he simply may not know whether his acts or omissions are in violation of the law. And if he has some pre-formed belief as to his culpability or innocence, that belief may turn out to be unfounded. Indeed, common human experience would suggest that, absent some special circumstance not evident here, the most likely purpose for seeking legal advice or representation is to find out what one's status and exposure may be. If there is a

rational inference to be drawn from the seeking of such advice or representation therefore, it cannot be more than that—an uncertainty. To draw an inference of consciousness of guilt from the seeking of such advice, then, is both illogical and unwarranted; the fact to be inferred—the consciousness of guilt—is not made more probable (or less probable) from the mere seeking of legal advice or representation, and so evidence of the predicate fact is simply irrelevant. On pure evidentiary grounds, it is inadmissible.

*Id.* at 691, 573 A.2d at 91; *see also Bruno v. Rushen,* 721 F.2d 1193, 1194 (9th Cir.1983); *Henderson v. United States,* 632 A.2d 419, 432–33 (D.C.1993); *Commonwealth v. Person,* 400 Mass. 136, 508 N.E.2d 88, 91 (1987).

In the case *sub judice,* the State sought to draw an inference of guilt from petitioner's consultation with an attorney.[6] Petitioner consulted with an attorney following his having been advised that serious allegations of misconduct had been made against him, with uncertain consequences for his career and the potential for criminal prosecution. This preceded any formal arrest or charge. Moreover, petitioner did not simply seek the advice of an attorney; he was *urged* to speak with counsel by his district commander. Under the circumstances, we find petitioner's consultation with an attorney equivocal at best and unable to support any logical inference of guilt. Thus, standing alone, consultation with counsel was not relevant.

Petitioner's consultation with an attorney was admitted into evidence as a rebuttal to defense counsel's opening remarks.[7]

---

**6.** In her closing argument, the prosecutor referred to petitioner's consultation with an attorney several times and told the jury: "See what the Defendant did that night.... He talked to an attorney and chose to resign. Again, just as His Honor instructed you, you cannot look in a person's mind, but you can look at what they did afterward and before to give you intent."

**7.** In his opening statement, defense counsel told the jury:

It was a snowball rolling out of control and Dorian Martin felt realistically what was happening. He was being held up as a sacrificial lamb to the Hispanic community in Baltimore.

The State sought to counter the characterization of the petitioner as a "sacrificial lamb" and the department as having "abandoned" him by introducing evidence that the department followed all standard operating procedures and provided petitioner with all of the rights protected under the LEOBR.

■ The doctrine of curative admissibility permits otherwise irrelevant evidence to be admitted in response to an adverse ruling or action. *See Clark v. State*, 332 Md. 77, 85, 629 A.2d 1239, 1242–43 (1993). While comments made in opening statements are not evidence under the principle enunciated in *Clark*, the "general principles involved in allowing a party to 'meet fire with fire' are applicable." *Terry v. State*, 332 Md. 329, 337, 631 A.2d 424, 428 (1993). This doctrine of expanded relevance has its limits, however, as the "remedy must be proportionate to the malady." *Terry*, 332 Md. at 338, 631 A.2d at 428.

■ The State's use of petitioner's consultation with an attorney to rebut defense counsel's "abandonment" assertion was not a proportionate response. Evidence of a criminal defendant's consultation with an attorney is highly prejudicial, as it is likely to give rise to the improper inference that a defendant in a criminal case is, or at least believes himself to be, guilty. *Cf. United States v. McDonald*, 620 F.2d 559, 564 (5th Cir.1980); *United States ex rel. Macon v. Yeager*, 476 F.2d 613, 616–17 (3d Cir.1973); *Henderson*, 632 A.2d at 433–34. Moreover, the State's deliberate use of such evidence to support its consciousness of guilt theory renders the evidence particularly prejudicial. *See Henderson*, 632 A.2d at 434; *cf. Zemina v. Solem*, 438 F.Supp. 455, 466 (D.S.D.1977), *aff'd.*, 573 F.2d 1027 (8th Cir.1978) (stating that "[t]he prosecution should not be allowed to imply that only guilty people contact

\* \* \* \* \* \*

You are talking about a sad, pathetic day when the police department has abandoned this man, has abandoned him in time of need rather than rally behind him or just even objectively and honestly assessing the situation, they've abandoned him to these people here so they can achieve what they want which is to satisfy the Hispanic community that sits in record numbers in this courtroom.

their attorneys"). Evidence that Major Klein had followed standard procedures and had advised petitioner of his rights under the LEOBR was sufficient to counter defense counsel's "abandonment" assertion without reference to petitioner's consultation with an attorney. The danger of unfair prejudice presented by introduction of this evidence substantially outweighed any probative value, and it should not have been admitted.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AND TO REMAND THE CASE TO THAT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.*