*Wesley Cagle v. State of Maryland*
Case No. 2329, September Term 2016
Opinion by Shaw Geter, J.

**HEADNOTES**

JURY TRIAL > SUFFICIENCY OF THE EVIDENCE

The victim's testimony provided sufficient evidence from which a rational trier of fact could have found the elements of first-degree assault and use of a firearm in the commission of a felony or crime of violence.

EVIDENCE > RELEVANCY > STATEMENTS BY PUBLIC OFFICIALS

Statements of Baltimore City State's Attorney could not have been known to Officer Cagle at the time of the shooting because they addressed the results of an investigation that occurred after the shooting took place. The State's Attorney, moreover, did not have personal knowledge of Officer Cagle's actions, and Officer Cagle sought to introduce the statements to prove a negative—that he acted reasonably because the State's Attorney believed two other officers acted reasonably. The trial court thus properly excluded the statements on relevancy grounds.

CROSS EXAMINATION > BIAS

The trial court was within its discretion to allow the prosecutor the opportunity to establish that the defense expert witness was biased toward police officers and thus not a credible witness on cross examination.

CROSS EXAMINATION > CHARACTER EVIDENCE

Officer Cagle's testimony about receiving multiple awards for distinguished service as a police officer put his character directly in issue, and the State was permitted to introduce evidence of his bad character.

SENTENCING > CRIMINAL LAW ARTICLE § 4-204

The trial court properly imposed separate sentences for Officer Cagle's first-degree assault and use of a firearm in the commission of a felony or crime of violence convictions. The language of section 4-204 contemplates that the sentence shall be "in addition to any other penalty imposed for the crime of violence or felony," and the legislative findings include a statement that "current law has not been effective in curbing the more frequent use of handguns in committing crime."

CLOSING ARGUMENT > EXHIBITS AND ILLUSTRATIONS

The trial court was within its discretion to prohibit defense counsel from playing a video with excerpts of in-court testimony during closing argument because defense counsel was permitted to reference the testimony verbally, and the court explained the video could have signaled that live testimony of every witness that testified would be replayed or given the impression that one witness's testimony is more important than the others.

 CROSS EXAMINATION > BIAS

The trial court did not abuse its discretion in prohibiting defense counsel from asking whether one of the State's witnesses was biased because counsel did not have a good faith basis and there was no factual foundation for the question.

Circuit Court for Baltimore City
Case No. 115246012

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2329

September Term, 2016

_____

WESLEY CAGLE

v.

STATE OF MARYLAND

_____

Beachley,
Shaw Geter,
Moylan, Charles E., Jr.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Shaw Geter, J.

_____

Filed:  February 2, 2018

Officer Wesley Cagle, appellant, was one of four officers to respond to a silent alarm triggered at a convenience store in Baltimore City. Two of the officers discharged their service weapons upon making contact with the suspect, who had appeared to be reaching for a knife or a gun. Ten to twenty seconds after the last shot was fired, the suspect indicated that appellant approached, called him a "piece of sh*t," and then fired one round in his groin. A jury in the Circuit Court for Baltimore City subsequently convicted appellant of first-degree assault and use of a firearm in the commission of a felony or crime of violence. Appellant timely appealed and raises the following questions for our review:

I. Did the trial court err, as a matter of law, in failing to grant appellant's motion for judgment of acquittal when the evidence produced by the State was insufficient to support a conviction for first-degree assault and use of a firearm in the commission of a felony or crime of violence?

II. Did the trial court err in denying appellant's motion to use a statement of the Baltimore City State's Attorney as a statement of a party opponent?

III. Did the trial court err in allowing, over objection, the State's extensive cross examination of defense use of force expert on an unrelated case?

IV. Did the trial court err in allowing, over objection, the State's cross examination of appellant about being a "cowboy" or "jump out boy"?

V. Did the trial court err in finding that use of firearms in the commission of a felony or crime of violence is applicable to those legally in possession of firearms?

VI. Did the trial court err in precluding appellant from using trial video in closing argument?

VII. Did the trial court err in refusing to allow cross examination of a crucial State's witness as to potential bias?

For the reasons discussed below, we shall affirm the judgments of the circuit court.

# BACKGROUND

On December 28, 2014, around 4:00 a.m., Officers Dancy Debrosse, Isiah Smith, Kevin Leary, and appellant responded to a call for service for a triggered silent alarm at a convenience store in Baltimore, Maryland. Officers Smith, Leary, and appellant went into the alley on the side of the store. Officer Debrosse stayed in front. The officers in the alley noticed what Officer Smith described as "a headboard from a bedroom set" propped up against the wall "so somebody could use it like a ladder to climb up [to] the roof." While the officers were investigating the method of entry, Officer Debrosse radioed that he could see someone inside the store. Officer Debrosse said the man was "wearing a mask" and "headed to the side door."

At that point, Officers Leary and Smith positioned themselves in a "V" shape on either side of the door; appellant remained in the alley. The suspect, later identified as Michael Johansen, opened the side door and saw a police car and one of the officers. Officers Leary and Smith testified that when Johansen opened the door, Officer Smith yelled "let me see your hands" several times. Johansen ignored the commands, walked towards the officers, and reached into his waistband. Officer Smith testified that he could see Johansen grab "something silver" and begin to pull it out of his pants. Fearing it was a knife or a gun, Officer Smith fired his weapon a total of four times. When Officer Leary heard the gunshots and saw Officer Smith jerk from the recoil of the weapon, he did not know whether Officer Smith had fired his gun or been shot. Believing that Officer Smith may have been shot, Officer Leary made the "split second decision" to fire three rounds at Johansen.

2

Johansen testified that the first shot grazed him in the left ear, and that he was also shot in the neck and hip. Johansen fell backward and landed flat on his back with his legs sticking out of the doorway and upper body remaining inside the store. Officer Smith testified that Johansen was "hollering in pain"; Officer Leary said that he was not moving at all. Officer Smith then called for an ambulance and reported shots fired.

Ten to twenty seconds after the last shot was fired, appellant emerged from the alley with his gun drawn. He circled behind Officer Smith, who was positioned in the street. Appellant testified that he did not look in Johansen's direction until he rounded Officer Smith and acknowledged that if Johansen had a gun, he could have been shot in the back or side upon exiting the alley. Appellant indicated that Officer Smith was "shaking like a leaf on a tree," and Officer Leary was "frozen," "locked straight in," and "ready to fire." Appellant also claimed that Officer Leary said to "be careful. He's got a gun." Appellant then walked directly into Officers Smith and Leary's line of fire, forcing them to lower their weapons.

As appellant approached Johansen, Officers Smith and Leary overheard a brief exchange of words—though neither could hear exactly what was said. The testimony is conflicting about what happened next. Johansen testified that he said "what was that, like one of them bean bag guns?" Appellant replied "no, it was a .40 caliber, you piece of sh*t," and then shot Johansen once in the groin. Johansen said he was not reaching or grabbing for anything during the exchange. Appellant, by contrast, testified that he repeatedly yelled "let me see your hands. Let me see your hands. Let me see your hands." Appellant claimed that Johansen pulled his hands up from his waist "like he was taking his shirt off or zipping

3

his jacket and connected to his hand was a shiny silver object." Appellant said that "if it would have been a gun, he could have shot me, I then discharged my weapon at the threat."

Officers Leary and Smith provided additional insight into appellant's actions after the shooting. In January 2015, Officer Leary told Internal Affairs that appellant should not have shot Johansen because "the threat was over" and what appellant did was "wrong." During trial, Officer Leary explained that he did not approach Johansen because "you don't know who's in [the store], if there's another person in there. You can't walk in front of two officers that still got their guns pointed. We're not trained that way." Officer Leary explained that he would have waited for additional units to arrive to assess the area and increase officer safety. Similarly, Officer Smith testified that he did not approach Johansen because "there were still too many unknowns," officers did not know whether anyone else was in the store, and there was no tactical plan in place to secure the scene.

During closing argument, appellant argued that the sequence of events leading to the shooting was chaotic, and his use of force was justified because he reasonably believed that Johansen was armed and presented a threat. Appellant also highlighted weaknesses in the State's case, for example: witnesses varied in their description of appellant's location at the time of the shooting; Johansen's prior statement to the police was inconsistent with his testimony at trial; and Johansen's medical evaluation revealed that he was not struck by the bullet fired by appellant. The State, on the other hand, noted that appellant came out of the alley ten to twenty seconds after the last shot was fired, there was no dispute that appellant had a conversation with Johansen prior to the shooting, and Johansen testified that appellant fired his weapon after calling him a "piece of sh*t." As a result, the State

4

argued that appellant had approached Johansen after the immediate danger was over and did so with the intent to shoot him. The jury ultimately convicted appellant of first-degree assault and use of a firearm in the commission of a felony or crime of violence.

Additional facts will be added as they become relevant to the issues below.

## DISCUSSION

### I.  Sufficiency of the Evidence

When reviewing the sufficiency of the evidence to support a conviction, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Smith*, 374 Md. 527, 533 (2003) (emphasis added). Our role is not to retry the case: "[b]ecause the fact-finder possesses the unique opportunity to view the evidence and to observe first-hand the demeanor and to assess the credibility of witnesses during their live testimony, we do not re-weigh the credibility of witnesses or attempt to resolve any conflicts in the evidence." *Smith v. State*, 415 Md. 174, 185 (2010) (citations omitted). In order to preserve an insufficiency claim, however, a defendant must move for judgment of acquittal during trial, specifying the grounds for the motion in accordance with Maryland Rule 4-324(a).[1] *Whiting v. State*, 160 Md. App. 285, 308 (2004). The language of Rule 4-324(a) "is mandatory, and review of a claim of

_____

[1] Maryland Rule 4-324(a), as pertinent, states "[a] defendant may move for judgment of acquittal on one or more counts, or on one or more degrees of an offense which by law is divided into degrees, at the close of the evidence offered by the State and, in a jury trial, at the close of all the evidence. The defendant shall state with particularity all reasons why the motion should be granted."

insufficiency is available only for the reasons given by appellant in his motion for judgment of acquittal." *Id.* (citation omitted); *see also Starr v. State*, 405 Md. 293, 301–03 (2008).

Appellant argues that courts have found police officers' use of force reasonable in circumstances where the officer mistakenly believed a suspect possessed a gun and posed a threat to the officer and/or others where in fact the suspect did not possess a gun and thus could not have posed an actual threat. Further, courts must look to whether a reasonable officer on the scene, at the moment of the incident, would have acted in the same manner as the officer accused of unlawful action. In accordance with these principles, and given the information presented to him immediately prior to the shooting, appellant contends that he acted reasonably in his use of force. The State, by contrast, argues that this claim is not preserved because it was not raised below and, even if preserved, Johansen's testimony provided sufficient evidence to support appellant's convictions.

We agree with the State. The crux of appellant's argument in his motions for judgment of acquittal related to his charges of attempted first- and second-degree murder (charges for which he was ultimately acquitted by the jury). Appellant's specific arguments on the first-degree assault and use of a handgun in a felony or crime of violence charges were that the sequence of events leading to the shooting was chaotic, and the State did not prove his bullet struck Johansen. His argument that a police officer's use of force may be reasonable where the officer mistakenly believed a suspect possessed a gun therefore has not been preserved for review. Nevertheless, we note that appellant approached Johansen ten to twenty seconds after the last shot was fired by Officers Smith and Leary, Johansen testified that he was not reaching or grabbing for anything when

6

appellant approached, and appellant fired his weapon after calling Johansen a "piece of sh*t." Accordingly, in the light most favorable to the prosecution, there was sufficient evidence from which a rational trier of fact could have found the essential elements of first-degree assault and use of a firearm in the commission of a felony or crime of violence.[2]

## II. Statements of Baltimore City State's Attorney

Marilyn Mosby, the State's Attorney for Baltimore City, announced that appellant would be charged with the shooting of Michael Johansen at a press conference on August 19, 2015. The State's Attorney also mentioned that "three of the four officers acted justifiably and appropriately within the Baltimore police protocol including two officers who fired their service weapons [Officers Smith and Leary] upon confronting a masked suspect who has also been charged with burglary." Appellant sought to admit these statements under the hearsay exception for a statement of a party-opponent during his trial. The court found that Mosby's statements were irrelevant because she did not have personal knowledge of the incident and they were offered to prove the truth of the matter asserted. The court explained:

> That the statements made by Ms. Mosby on the street, pre-trial, and in the [announcement] of this indictment are anything more than an announcement to the public of the charges to be brought and the party against who they are being brought. Until and unless either [of the prosecuting attorneys] throws away some of these charges in this courtroom in closing argument, those are hearsay statements offered for the truth of the matter asserted by a party who has no knowledge, no personal knowledge, has nothing to do with what goes on in this courtroom and are not [statements] that are trustworthy, truthful and . . . no inferences can be drawn that are reasonable in this matter.

---

[2] Johansen's testimony also distinguishes this case from the "mistaken belief" line of cases cited by appellant.

7

The court also found that the statements were not probative of any fact of consequence because appellant was seeking to prove a negative. The court stated:

> It's another attempt by [defense counsel] to prove a negative. You want to prove that your client didn't do it because two other people were found to act -- [to] have acted reasonably by another party who chose to charge or not charge. We're not proving negatives. The only thing we're proving is positives if they can do so beyond a reasonable doubt.

As a result, the court excluded the statements from appellant's trial.

On appeal, appellant argues that State's Attorney Mosby's statements are relevant, not specifically to the State's case per se, but rather to his defense that it was reasonable to discharge his weapon at Johansen under the circumstances. Since Mosby's statements would allow the jury to more accurately compare and contrast the actions of Officers Leary and Smith with those of appellant, the court erred in excluding the statements. Conversely, the State notes that its theory at trial was that appellant approached Johansen after the immediate danger was over and did so with the intent to shoot him. Accordingly, what the elected State's Attorney thought about Officer Leary or Smith's decision to shoot Johansen was irrelevant because it did not make any fact salient to appellant's criminal culpability more or less likely to be true.

Maryland Rule 5-401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We have recognized that "police officers, when arresting a suspect, have the right to take reasonably necessary measures to make the arrest in a manner that protects both the public and themselves." *Tavakoli-Nouri v. State*, 139 Md. App. 716, 731 (2001). Where, as here, an

8

officer has been accused of using excessive force in the course of an arrest, evidence is relevant as to whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him. *Branch v. McGeeney*, 123 Md. App. 330, 348 (1998). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

In this case, State's Attorney Mosby's statements that Officers Leary and Smith acted reasonably could not have been known to appellant while he was "on the scene" because they addressed the results of an investigation that occurred *after* the shooting took place. Additionally, as noted by the trial court, Mosby did not have personal knowledge of appellant's actions, and appellant sought to introduce the statements to prove a negative—that he acted reasonably because the State's Attorney believed Officers Leary and Smith acted reasonably. Therefore, it cannot be said that the statements had "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Md. Rule 5-401, and the court did not err in excluding Mosby's statements.[3]

---

[3] Appellant also argues that Mosby's statements are admissible under the party-opponent hearsay exception. We need not reach this issue because the statements are irrelevant. Nevertheless, we note that the case on which appellant relies to support this proposition— *Bellamy v. State*, 403 Md. 308 (2008)—is distinguishable because the defendant in that case was not a police officer, and the statement to be admitted involved a codefendant that was present at the scene of the crime.

## III.    Cross Examination of Defense Expert

During his case-in-chief, appellant called Emanuel Kapelsohn, who was accepted as an expert in the areas of police firearms, training, tactics, shooting scene reconstruction, and use of force.  Kapelsohn testified that it was reasonable for appellant to approach Johansen because Officers Leary and Smith had just fired their weapons, and standard police procedure is that the first officers to fire should not be the ones to inspect, disarm, or handcuff a suspect.  Next, Kapelsohn credited appellant's testimony that Johansen was moving his hands inside of his waistband—an area where police are trained and know from experience that suspects place weapons—and he noted Officer Leary told appellant that Johansen had a gun.  As a result, Kapelsohn concluded that it was reasonable for appellant to fire one shot at Johansen until he could see Johansen's hands and felt the threat was over.

On cross examination, the prosecutor sought to establish that Kapelsohn was biased toward police officers and thus not a credible witness.  For example, the prosecutor asked Kapelsohn whether he ever found a shooting to be unreasonable in his nineteen years while serving on a shooting review board for Berks County, Pennsylvania.  Kapelsohn said that he did, once.  The prosecutor then asked whether Kapelsohn had ever testified for the State against a police officer in the approximately 300 times he testified as an expert.  Kapelsohn responded that he had not.  As further evidence of bias, the prosecutor asked about a case arising out of Kenosha, Wisconsin, where Kapelsohn was called as an expert witness and opined that a police officer named Pablo Torres' use of force was reasonable.  Specifically, the prosecutor questioned the use of a video made by Kapelsohn that showed a bucket filled with twelve pounds of sand could break wooden boards, a watermelon, and clay pots—

even though the victim in that case was holding an empty five-gallon bucket. Defense counsel raised a number of objections, but they were overruled by the trial court.

On appeal, appellant argues that the line of questions involving the Torres case were irrelevant because Johansen was not holding a bucket or swinging a weapon at the time of the shooting. Further, even if relevant, the questions created a risk that the jury might believe that because Johansen was unarmed, no officer acted reasonably. As a result, appellant argues that the prosecutor's questions were misleading and presented a danger of unfair prejudice. The State, on the other hand, argues that this issue has not been preserved because appellant objected to only a small portion of the testimony he challenges on appeal. However, even if preserved, the State argues that the prosecutor's questions were relevant to Kapelsohn's credibility, and the trial court acted within its discretion in allowing the prosecutor to ask them.

The Court of Appeals has explained that a "trial court has broad discretion in determining the scope of cross-examination, and we will not disturb the exercise of that discretion in the absence of clear abuse." *Martin v. State*, 364 Md. 692, 698 (2001). While such discretion is not unlimited, "a cross-examiner must be given wide latitude in attempting to establish a witness' bias or motivation to testify falsely." *Id.* (citation omitted). The grounds for impeachment by inquiry of a witness are set forth in Md. Rule 5-616, which states: "[t]he credibility of a witness may be attacked through questions asked of the witness, including questions that are directed at . . . [p]roving that an opinion expressed by the witness is not held by the witness or is otherwise not worthy of belief" or

11

"[p]roving that the witness is biased, prejudiced, interested in the outcome of the proceeding, or has a motive to testify falsely." Md. R. 5-616(a)(3)–(4).

In this case, the State is correct in that appellant did not object each time the prosecutor asked about the video Kapelsohn made in the Torres case. *See Wimbish v. State*, 201 Md. App. 239, 261 (2011) (citation omitted) ("[O]bjections must be reasserted unless an objection is made to a continuing line of questions."). However, there appears to be at least one objection made by defense counsel that is not reflected in the transcript,[4] and the court overruled two related objections when the prosecutor asked about facts in the Torres case. In an abundance of caution, and since the State was not deprived of admitting evidence on this issue at trial, we shall treat appellant's claim as preserved for review.

Otherwise, we agree with the State. Kapelsohn was a key witness for the defense. He was the only person to testify that appellant's use of force was justified, and if the jury found his testimony more credible than that of the State's witnesses, verdicts of not guilty would have followed. Since the prosecutor's questions were intended to prove bias toward police officers, the trial court was within its discretion to afford the prosecutor "wide latitude in attempting to establish [Kapelsohn's] bias or motivation to testify falsely." *Martin*, 364 Md. at 698.

---

[4] During Kapelsohn's testimony, the court stated: "Counsel, I understand you have an ongoing objection. But as long as [Kapelsohn] answers the question asked, I can rule on your objection." The transcript does not indicate that defense counsel previously made an ongoing objection.

## IV.    Appellant's Cross Examination

On cross examination, the prosecutor asked appellant about his prior positions within the Baltimore Police Department, including his time in the Violent Crime Impact Division (VCID).  Specifically, the prosecutor asked appellant whether he was aware that the unit was known as the "jump out boys," "knockers," or "cowboys."[5]   Appellant objected when asked if he knew whether the unit had been referred to as cowboys, and again when asked if he had ever been referred to as a cowboy, but the trial court overruled his objections.

Appellant argues on appeal that such questioning was irrelevant because he was not working in VCID at the time he was charged, nor was his enforcement action related to the mission or tactics of VCID.  The purpose of the State's questions, appellant maintains, was to improperly link appellant to VCID's negative reputation in Baltimore City, serving to unfairly prejudice the jury against appellant.  The State, on the other hand, argues that the majority of appellant's claim is not preserved because he did not object when asked whether VCID was referred to as jump out boys or knockers.  As to the cowboys reference, the State maintains that appellant "opened the door" to the issue by testifying on direct examination about receiving multiple awards for distinguished service as a police officer.

Utilizing the opened door doctrine is a method by which we allow parties to "meet fire with fire" when they introduce "otherwise inadmissible evidence in response to evidence put forth by the opposing side." *Little v. Schneider*, 434 Md. 150, 157 (2013).

---

[5] During oral argument, appellant's counsel indicated that "jump out boys," "knockers," and "cowboys" were derogatory terms used to refer to officers in Baltimore City.

The doctrine is based on principles of fairness. *Id.*; *see also Clark v. State*, 332 Md. 77, 85 (1993) ("'[O]pening the door' is simply a way of saying: 'My opponent has injected an issue into the case, and I ought to be able to introduce evidence on that issue.'"). In effect, the doctrine serves as a rule of expanded relevancy that "authorizes admitting evidence which otherwise would have been irrelevant in order to respond to (1) admissible evidence which generates an issue, or (2) inadmissible evidence admitted by the court over objection." *Clark*, 332 Md. at 84–85. Next, while it is true that evidence of a person's character or character trait is not admissible to prove that the person acted in accordance with the character or trait on a particular occasion, Md. Rule 5-404(a), a defendant's character is put in issue "when he states that he has good character or a good record, or offers direct evidence of good character." *Braxton v. State*, 11 Md. App. 435, 439 (1971). "Once the defendant raises the issue of his character, the prosecution may then offer evidence of the defendant's bad character." *Id.* at 439–40.

In this case, appellant testified on direct examination that he "received a bronze star [for] distinguished service for the capture of Javon House who murdered an off duty detective." Additionally, appellant "received an award from the governor of Louisiana" after being selected by colonels and the commissioner to work in the aftermath of Hurricane Katrina. Finally, appellant testified that while he was working in the Drug Enforcement Unit—a unit whose name was later changed to VCID—he "received two Project Exile awards from the federal court of the United States" for the recovery of firearms. Appellant's testimony about his distinguished service as a police officer put his character directly in issue, and the State was permitted to rebut this evidence.

14

Although there was no proffer or proof of the existence or source of VCID's negative reputation,[6] any error on the trial court's part was harmless beyond a reasonable doubt. *See West v. State*, 124 Md. App. 147, 169 (1998) (citation omitted) ("In a criminal case, the test for determining whether error by the trial court was harmless is whether, upon an independent review of the record, we are able to 'declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict[.]'"). Appellant linked himself to VCID when he testified on direct examination. When the prosecutor asked about the unit, appellant said that he was familiar with the term "jump out boy" and explained that it refers to an officer that "pull[s] up in an unmark[ed] car and jump[s] out of the car." No objection was raised by defense counsel. Appellant also stated that VCID is "called all kinds of things." It was not until the prosecutor asked whether the unit was also referred to as "cowboys" that defense counsel ultimately objected. In light of the information appellant provided about VCID, as well as his failure to object to questions about "jump out boys" and "knockers," we are persuaded, beyond a reasonable doubt, that the prosecutor's questions did not influence the verdict.

---

[6] The VCID unit where Officer Cagle was working was alleged by residents in Baltimore to have been overly aggressive. For example, in the Department of Justice's civil rights investigation of the Baltimore Police Department, the DOJ noted that "[d]uring the course of our investigation, we received a large number of anecdotes specifically identifying plainclothes officers enforcing violent crime and vice offenses (the names and organization of the units have changed multiple times over the years covered by the investigation) as particularly aggressive and unrestrained in their practice of stopping individuals without cause and performing public, humiliating searches." United States Dep't of Justice, Civil Rights Division, *Investigation of the Baltimore City Police Department* (Aug. 10, 2016), https://www.justice.gov/crt/file/883296/download.

15

## V.    Appellant's Firearm Conviction

Appellant raises two arguments in connection with his firearm conviction. First, he argues that the dominant purpose of Criminal Law § 4-204, the statute criminalizing the use of a firearm in the commission of a felony or crime of violence, is to stop the rise of the use of handguns in crimes of violence. A law enforcement officer who is legally in possession of a firearm does not fall within the class of persons for whom the statute was created, and thus he should not be held to the same standard in section 4-204. Second, appellant argues that the crimes of first-degree assault and use of a firearm in the commission of a felony or crime of violence have the exact same elements, and the imposition of a sentence for both offenses would violate the Double Jeopardy clause in the Fifth Amendment of the United States Constitution. The State, by contrast, argues that section 4-204 applies to appellant because the General Assembly expressed an intent to curb the use of handguns in the commission of felonies or crimes of violence, and double jeopardy does not attach because the statute makes clear that the penalty imposed is "in addition" to any other felony or crime of violence convictions. We agree with the State.

"In construing a statute, one begins with the 'plain meaning' of the statutory language and may end there if the meaning is plain enough." *State v. Roshchin*, 446 Md. 128, 140 (2016) (footnote omitted). A plain reading of the relevant portions of section 4-204 prohibits a person from using a firearm in the commission of a crime of violence, and it contemplates that the sentence shall be "in addition to any other penalty imposed for the crime of violence or felony[.]" Md. Code Ann., Crim. Law § 4-204(b)-(c) (West 2002); *see also State v. Lancaster*, 332 Md. 385, 411 (1993) (citation omitted) ("[T]he legislature

16

may indicate an *express intent* to punish certain conduct more severely if particular aggravating circumstances are present by imposing punishment under two separate statutory offenses which otherwise would be deemed the same under the required evidence test."). And, importantly, Public Safety Article § 5-101(c)(3) lists first-degree assault as a crime of violence. Excluding appellant, who was found by a jury in the Circuit Court for Baltimore City to have committed the crime of first-degree assault with a handgun, would therefore run contrary to the clear intent of the statute.

This holding is in accordance with the statute's legislative findings, which include a statement that "current law has not been effective in curbing the more frequent use of handguns in committing crime[.]" Crim. Law § 4-202(4). It is also consistent with *Riley v. State*, where we held that section 4-204 applied to an officer that discharged his service weapon upon a suspect that "did not pose any imminent threat of harm" because he was handcuffed and running away. 227 Md. App. 249, 262 (2016). As a result, we find no error in the imposition of separate sentences for appellant's first-degree assault and use of a firearm in the commission of a felony or crime of violence convictions.

## VI.     Closing Argument

Appellant next argues that the court erred in excluding a video with excerpts of trial testimony that his attorney sought to play during closing argument. The video, as originally prepared, included a pretrial statement of Michael Johansen, as well as in-court testimony of Johansen, the firearms examiner, Officer Leary, and Officer Smith. The court denied the request to play the in-court testimony, reasoning:

17

> I routinely have for 17 years, and did in this case, instruct the jury to take notes. I told them that it's their collective memory of the case. I told them to be mindful of the live testimony and that when they go into the jury room, that they are to use their collective memory of the evidence in rendering their verdict.
>
> \*     \*     \*
>
> . . . I do not want to give this jury the impression that we're going to sit for the rest of this week and replay the live court testimony of every witness who's testified in this case, nor am I going to allow anyone to play excerpts of something, giving the impression that one witness's testimony is more important than another because as I've already instructed them, they are to consider all of the evidence in this case, regardless of who called the witness[.]

The court explained that appellant's counsel was within his right "to reference trial testimony and to summarize it or restate it or draw [the jury's] attention to it, emphasize whatever you want verbally" during his closing argument. The court also permitted counsel to play the video of Johansen's pretrial statement, as well as a surveillance video of the convenience store where the shooting took place.

On appeal, appellant argues that the full video would have allowed the jury to observe the witnesses' demeanor and allow counsel to compare and contrast inconsistencies in the witnesses' statements. Therefore, because the case was largely dependent on witness testimony and credibility, the court abused its discretion in denying appellant's request to play the in-court testimony. Conversely, the State notes that the scope of closing argument is within the discretion of the trial court, and they argue that the court's concern about the jury's placing undue emphasis on the excerpts of trial testimony provided sufficient cause to exclude the in-court video.

We agree with the State. As a general rule, the "permissible scope of closing argument is a matter left to the sound discretion of the trial court. The exercise of that

18

discretion will not constitute reversible error unless clearly abused and prejudicial to the accused." *Lee v. State*, 193 Md. App. 45, 77 (2010) (citation omitted). Here, the trial court provided two reasons for prohibiting counsel from playing the in-court testimony: it could signal that the live testimony of every witness that testified would be replayed (thereby causing an undue delay, waste of time, or needless presentation of cumulative evidence), and it might give the impression that one witness's testimony is more important than the others (which might mislead the jury, confuse the issues, or result in unfair prejudice). Since appellant's counsel was not prohibited from referencing the testimony verbally, the court did not abuse its discretion in excluding the excerpts of in-court testimony.

## VII.  Cross Examination of Officer Leary

The final issue raised by appellant is that the court erred in refusing to allow cross examination of Officer Leary for bias. During the trial, appellant asked Officer Leary multiple times whether he was aware of any allegations that he was the one that shot Michael Johansen in the groin. The State objected each time, and the court sustained the objections on the ground that the questions were premised on a fact not in evidence.

On appeal, appellant argues that the inquiry on cross examination went to the heart of whether Officer Leary was biased in favor of the State and against appellant: if Officer Leary was aware of the allegations, his testimony may have been tainted by his desire to protect his own interest. Appellant claims there was a factual foundation for the question because Johansen's pretrial statement alleged that a white officer shot him in the groin, and Johansen testified at trial that the white officer who shot him in the groin was standing in

19

the street.  Appellant also argues that the probative value of the question would not have been outweighed by the risk of unfair prejudice or confusion.

The State, by contrast, argues that defense counsel did not have a good-faith reason to believe that Officer Leary was aware of the allegation because Johansen's statement was not entered into evidence; and, even if counsel had a good-faith reason, the question had no impeachment value because Officer Leary never denied shooting Johansen.  Appellant responds that Officer Leary would have had ample opportunity to speak to the assistant state's attorney assigned to prosecute Johansen, to learn of the allegations in the course of his personal internal investigation, or to receive the information through less official channels.

As indicated above, trial courts have broad discretion in determining the scope of cross-examination.  *Martin*, 364 Md. at 698.  In *Leeks v. State*, we articulated a test for determining the admissibility of questions aimed at eliciting witness bias during cross-examination.  110 Md. App. 543, 557–58 (1996).  We explained that such questions "should be prohibited only if (1) there is no factual foundation for such an inquiry in the presence of the jury, or (2) the probative value of such an inquiry is substantially outweighed by the danger of undue prejudice or confusion." *Id.*

In this case, the trial court gave appellant's counsel four attempts to ask Officer Leary whether he was aware of any allegations that he was the officer that shot Johansen in the groin.  The State objected each time.  After the third objection, all counsel approached the bench and the court explained that appellant's question was improper because it was premised on a fact that was not in evidence:

You're not accepting the answer [Johansen] gave you when he stated that your reading of his statement is different than his, I guess intent, when he made the statement. You read the statement as if there's an accusation by Officer Cagle that Officer Leary is the shooter that caused the injury to the groin. The witness clarified that was not his statement. His statement was that Officer Cagle was admitting that it was his shot that caused the injury to the groin. You have a belief that is not substantiated by the testimony of this witness. And what you're trying to do is, as [the prosecutor] said, ask a question based on a fact not in evidence.

During another bench conference, appellant's counsel conceded that the only good-faith basis for his question to Officer Leary was from Johansen's pretrial statement:

THE COURT: Do you have any allegations, in writing or other, to show me that this witness was accused of shooting, other than the shots that were initially fired that he's testified to?

[APPELLANT'S COUNSEL]: It's only from the statement of Mr. Johansen, that's all I have.

All counsel approached the bench once more after the State's last objection was sustained. Appellant's counsel argued, as he does on appeal, that the question should be admissible because Officer Leary was likely to have learned about the accusation after the interview took place. However, he again acknowledged that he did not have a good faith basis to ask the question:

THE COURT: So your question is whether or not [Officer Leary] had the occasion to speak to others about what happened?

[APPELLANT'S COUNSEL]: Yes.

THE COURT: And you don't know the answer to that question, you're on a fishing expedition?

[APPELLANT'S COUNSEL]: As to this specific witness, I do not know.

21

Given the above, it cannot be said that there was a "factual foundation for such an inquiry in the presence of the jury." *Leeks*, 110 Md. App. at 557–58. Nor are we persuaded that the additional cases cited by appellant establish circumstantial evidence for the inquiry in the presence of the jury. In *Calloway v. State*, the Court of Appeals held that the trial court committed reversible error when it prohibited the defense from cross-examining a State's witness who was incarcerated for unrelated offenses pending trial about whether the witness' testimony was for the purpose of a favorable plea offer in the pending cases. 414 Md. 616, 619–20 (2010). Importantly, the defense had learned that the witness was released from jail, the pending charges were *nolle prossed*, and notwithstanding the unequivocal evidence that the witness had violated probation in another case, no violation of probation charge was filed against him. *Id.* Similarly, in *Martinez v. State*, cited by appellant, the Court held that the trial judge should have permitted the defense to cross examine a witness whose pending charges had been *nolle prossed* six days prior to testifying against the defendant in a motions hearing. 416 Md. 418, 431 (2010).[7]

---

[7] The Court of Appeals recently discussed *Calloway* and *Martinez* in *Manchame-Guerra v. State*, ___ Md. ___, No. 14, Sept. Term 2017 (decided January 23, 2018). In *Manchame-Guerra*, defense counsel sought to ask a witness who had pending charges in an unrelated matter whether he hoped or expected to obtain a benefit from the State in exchange for testimony favorable to the prosecution. The State objected to the question, and the trial judge sustained the objection. On appeal, the Court held that the judge improperly limited cross examination because there was a sufficient factual foundation to permit inquiry into the witness' motive to testify falsely—specifically, the witness had pending charges in the same county as the defendant's trial; the detective investigating the underlying crime knew of the pending charges at the time he interviewed the witness; and those charges, which had been pending for approximately eighteen months, remained pending at the time of the witness' testimony. Unlike *Manchame-Guerra*, however, Officer Leary was not charged with a crime—related or unrelated—at the time of Officer Cagle's trial, and Michael

In this case, Johansen was charged with burglarizing the convenience store where Officers Debrosse, Smith, Leary, and appellant were called to respond. Unlike the cases cited by appellant, however, the State did not *nolle pross* Johansen's charges, nor did it make any promise, reward, or inducement in exchange for his testimony at appellant's trial. Next, Johansen's statement, which had not been admitted into evidence, was the sole basis supporting appellant's theory that Officer Leary had been accused of shooting Johansen, and Johansen clarified at trial that appellant was the one that shot him. Accordingly, *Calloway* and *Martinez* are not controlling, and the trial court did not abuse its discretion in refusing to allow appellant's question about whether Officer Leary was aware of any allegations that he was the officer that shot Johansen in the groin.

> **JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

Johansen admitted on direct examination that he was convicted of burglarizing the convenience store. Therefore, we find that case is distinguishable.